UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------X
CLIFFORD MCCRAE, GARRETT BROWN, and
NASTASSIA CAMPBELL,                                                    DOCKET NO:

                Complainants,

        v.                                                                              **COMPLAINT**

H.N.S. MANAGEMENT COMPANY d.b.a. CT
TRANSIT, and ANGELA PELLIGRINI, individually
and in her official capacity,

                Respondents.
------------------------------------------------------------------X

      **COMPLAINANTS** Clifford McCrae, Garrett Brown, and Nastassia Campbell, by and through their attorneys, the Law Offices of Tricia S. Lindsay, PC, hereafter collectively referred to as "Complainants", hereby allege the following against the Respondents named herein:

## PRELIMINARY STATEMENT

      This action arises under, inter alia, the National Transit Systems Security Act, (hereinafter "NTSSA" or "the Act"), 6 U.S.C. § 1142, which prohibits public transportation employers from retaliating against employees for exercising their rights pursuant to the OSHA and protects public transportation employees who report hazardous safety and security conditions from discharge, demotion, discipline or any other discriminatory act due, in whole or in part, to the employees' filing of a complaint related to enforcement of the NTSSA. Complainants also assert claims under 42 U.S.C. § 1983, Title VII, the American with Disabilities Act, and C.G.S. 46a-60(b)(1), for discrimination on the basis of race, color, national origin, class, disability and for retaliation for their opposition to the creation of an unsafe work environment, through the use of hazardous chemicals.

## I. PARTIES

1. Complainant CLIFFORD MCCRAE is a Jamaican male who has been employed as a Bus Operator, by respondent Connecticut Transit (CT Transit), for approximately 7 years. Mr. McCrae resides at 185 Barker Street, Apt. 82, Hartford, CT 06114.

2. Complainant NASTASSIA CAMPBEL is a Jamaican female who has been employed as a Bus Operator, by CT Transit for approximately 7 years. Ms. Campbell resides at 104 Russ Street, Hartford, CT 06106.

3. Complainant GARRETT BROWN is a Jamaican male, who has been working for CT Transit as a Bus Operator for approximately 7 years. Mr. Brown resides at 70 Darby Street, Bloomfield, CT 06002.

4. Respondent H.N.S. MANAGEMENT COMPANY d.b.a. CT TRANSIT ("CT TRANSIT") is the principal operator of CT Transit, a public transportation system serving much of the State of Connecticut and is a division of the Connecticut Department of Transportation. CT transit provides bus service via contract providers for seven different metropolitan areas in the State of Connecticut, mostly concentrated in Hartford and New Haven counties. Their corporate office is located at 100 Leibert Rd, Hartford, CT 06106.

5. Respondent ANGELA PELLIGRINI is the Worker's Compensation Officer for CT Transit. Ms. Pelligrini is directly responsible for the decision to allow or deny workers' compensation claims and is responsible for ensuring the workplace safety of the Complainants.

## II. JURISDICTION

6. Complainants are alleging violations of Title VII of the Civil Rights Act and C.G.S. 46a-60(b)(1), for discrimination on the basis of race, color, and for retaliation against their

2

opposition to a perniciously unsafe work environment as documented by multiple medical professionals and OSHA.

7. This Court has supplemental jurisdiction over Complainants' state law claims pursuant to 28 U.S.C 1367(a).

8. Venue is proper in the District of Connecticut because it is the district where all three (3) Complainants reside and where Respondent's headquarters is located.

9. This honorable court has jurisdiction over the matter pursuant to 28 U.S.C §1331 and §1333, and 42 U.S.C §2000(e) – 2(a)(1), NTSSA, 6 U.S.C § 1142.

### III. AMINISTRATIVE PROCEDINGS

10. Complainants have timely filed charges of employment discrimination with Equal Employment Opportunity Commission and complaints against an unsafe work environment submitted to OSHA. Complainants initiate this action within 90-days of their receipt of Notice of Right to Sue. (*See Exh.* **A**).

11. More than two-hundred and ten (210) days have elapsed since the filing of Complainants' OSHA complaint without the issuance of a final decision by OSHA. OSHA has issued a letter acknowledging the same. (*See Exh.* **B**).

### IV. BACKGROUND

12. Complainants have been employed with Respondent for approximately seven (7) years as a Bus Operator. Complainants have always performed their duties in an above average manner.

13. On or about April 3, 2020, Complainants began feeling ill while operating their buses but were unsure what the source of the ill feeling was.

14. On or about April 9, 2020, upon reporting to work, Complainant McCrae began to feel ill. Upon entering his assigned bus, Mr. McCrae began to experience serious health complications consisting of sudden eye swelling and irritation and discharge, headaches, sneezing, rashes and burning on his hands.

15. Complainants McCrae and Campbell immediately reported the situation to Supervisors Mark Articolo and Blend Nako. Complainant Brown, who was experiencing similar symptoms, reported this to Supervisor Stanley Zimoski, and a First Report of Occupational Injury was completed.

16. Similarly, Complainant Campbell left work early on April 7th, 2020, and went to see her doctor, as she was unaware of what was happening to her. During the night, Ms. Campbell eventually began to experience some relief from her symptoms, and so she returned to work the next day. However, upon entering her bus, she began to experience the same reactions.

17. Complainants then reported to Respondent's medical facility, Occupational Medicine Partners, LLC-St. Francis Hospital, located at 100 Deerfield Road, Windsor, CT 06095, all around the same timeframe. Upon being evaluated, it was determined that all (3) Complainants were suffering from complications due to exposure to Respondent's new chemical disinfectant agents, Clean on the Go HDQC2, and TB-CIDE QUAT, which were being used to clean the buses at least four (4) times per day.

18. Respondent was provided with a medical documentation and records from all complainants indicating that Complainants should not be exposed to these chemical agents.

19. On or about April 17, 2020, the Financial Secretary and Business Agent for Local 425, Artan Martinaj, filed a complaint with OSHA on behalf of Complainants and multiple drivers

who were exposed to TB CIDE QUAT and were experiencing similar reactions, as well as due to the company's failure to provide Safety Data Sheets to the drivers when requested and for improper use of the chemicals to clean the buses.

20. This complaint prompted an investigation by OSHA.

21. After visiting Respondent's medical provider, Complainants were recommended to see a specialist. In following the advice of Respondent's provider, all (3) Complainants made an appointment and did see Dr. Moore at UCONN Health. Dr. Moore is an Environmental Specialist who treated all complainants.

22. Dr. Moore called Ms. Pellegrini, Worker's Compensation Liaison to inquire about the situation. Upon speaking with Ms. Pellegrini, he decided he needed to pull all three (3) Complainants, Ms. Campbell, Mr. Brown, and Mr. McCrae, out of work pending his further investigation.

23. Even though Respondents were notified by two (2) separate medical professionals, that the chemicals being used to disinfect the buses were the direct cause of Complainant's health issues, Respondent, through Ms. Pelligrini, denied Complainant's Worker's Compensation Claim for Mr. Brown and Mr. McCrae, indicating that their injuries "did not arise out of the course of employment and there are no clinical objective findings to support causation." Ms. Pellegrini even went as far as contacting Mr. McCrae and Mr. Brown's treating physicians to ascertain private information in violation of HIPAA.

24. Respondents were provided with multiple additional medical documentation from Ms. Campbell as well. Both directly from their own medical providers as well as from Complainant's treating physician, and Dr. Moore, indicating that Ms. Campbell could return to

work but with reasonable accommodations implemented, which included using an alternate cleaning solution and using the solution correctly.

25.     Respondent refused to entertain these suggestions, much less implement the simple accommodation requests. With that, Ms. Pellegrini informed Ms. Campbell that she would not be allowed to return to work until Respondent decided to stop using the two (2) chemicals.

26.     Ms. Campbell's request for an alternative assignment and/or light duty was also denied. Counsel for Respondent then told Ms. Campbell's Worker's Compensation attorney that he was going to advise Respondent to terminate Ms. Campbell and the other Complainants, Mr. Brown, and Mr. McCrae.

27.     As a result of Respondent's actions, Complainant Campbell, like Mr. Brown and Mr. McCrae, was also forced out of the workplace for four (4) months due to Respondent's refusal to provide any reasonable accommodation.

28.     Throughout the entire time, from April 2020 until on or about August 20, 2020, exactly four (4) months, Complainants were not allowed to return to work and despite their efforts to receive compensation for his work induced injury, Respondent continuously denied all WC claims. As such, Complainants were all out of work for four (4) months without compensation, compensation for exercising their First Amendment Rights. They were only allowed to return due to the OSHA investigation which was implicated due to the complaints.

29.     Upon returning to work, all Complainants were denied opportunities for overtime, which was allotted to him regularly prior to the filing of his complaint.

30.     Additionally, even though Respondent was notified by at least two (2) separate medical professionals, that the chemicals being used to disinfect the buses were the direct cause of

6

her health issues, Respondent denied Ms. Campbell's Worker's Compensation Claim, indicating her injury "did not arise out of the course of employment and there are no clinical objective findings to support causation" and because she sought treatment from her private doctor initially. This is very similar, if not more malicious in fashion than the way the other complainants were denied.

31. Throughout all times relevant to this complaint, Respondents expressed their contempt for Complainants for filing their complaints with the union and with OSHA, regarding the use of the chemicals. In fact, this was demonstrated when Linda, from dispatch stated, "it's always the Jamaicans", and "the Jamaicans always give the problems," and with the statement from Respondent's attorney regarding terminating the Complainants.

32. In or about the beginning of July 2020, Complainant McCrae attended a meeting with Respondent and some of the bus drivers, who notably were all Jamaican, and who were all forced out of work without pay because Respondent refused to stop utilizing the harmful chemicals.  At this meeting, Ms. Linda Delallo, Assistant General Manager of Transportation Services, was present.  The bus drivers in attendance were some of the same bus drivers, along with Complainant, who notified the union of the Respondent's use of the chemicals and/or the health complications they were experiencing because of their exposure to the chemicals. Interestingly, Complainant and the other drivers were told it was up to Ms. Angela Pelligrini, Liaison for Worker's Compensation, to decide if the chemicals would no longer be used, and she had decided that the Company would continue to use the chemical agents, despite the adverse effects on their drivers.  Following that meeting, the Union filed a grievance and Mr. McCrae filed his individual complaint with OSHA.

33. It was further demonstrated in that Respondent continued to refuse to accommodate the requested restrictions and continued to use the offending and harmful chemical disinfectants despite all of the Complainants severe allergic reactions resulting in obvious disabilities.

34. Despite documentation and strong urging from all medical professionals who examined the Complainants, CT Transit continued to employ the harmful chemical agent to sanitize the busses and failed to even take reasonable steps to mitigate the severe medical complications the use of the chemicals was causing.

35. Rather than discontinue use of the dangerous chemical, or to even apply it correctly, Respondents attempted to conceal its danger and the reactions it was causing to the complainants. They repeatedly denied the dangerousness of the chemicals despite overwhelming proof to the contrary and claimed to have employed "mitigating efforts" to lessen the effects of the chemical. They even lied at one point claiming they were using Palmolive dish soap and water instead of the chemicals. This was a blatant lie.

36. Not only were no mitigation efforts actually made, but also, not a single medical professional recommended any course of action to mitigate the effects. Every recommendation was for a **full cease and desist** of Complainants' exposure to the chemicals.

37. As a result of the Respondents' callous, reckless indifference to the health and safety of its bus operators, the Complainants illnesses and suffering continued and grew progressively worse.

38. Due to CT Transit's utter refusal to cease use of chemical agents that they were well aware were harming their drivers, complainants fell ill to the point where they could no longer work. Exposure to the chemicals, as the Respondents knew or should have reasonably known, was

8

making the drivers increasingly more ill. In fact, Respondents were fully aware of the hazards of the chemicals as they provided Hazmat suits to the employees who were applying the chemicals but offered no protection to the bus operators.

39.  Hence, while management sat safely in their offices away from the area where the chemicals were being used, and the other employees were fully protected by protective equipment, the bus operators were left fully exposed to the hazardous chemicals and were not even provided the chemical Data Sheets as required.

40.  Hence, the Complainant's pronouncement and complaint of their working conditions to OSHA resulted in the Respondents' retaliation of denying workers compensation and continuing to use the now well-known harmful chemicals, as well as the denial of overtime hours once they did return, and the confiscation of payments towards benefits which were suspended for the four (4) months, Complainants were out of work.

41.  Interestingly enough, subsequent to the filing of Complainants' OSHA complaints pursuant to § 11(c), on April 26th, 2021, OSHA Investigator Nicholas Ehr amended the complaints of all three (3) complainants to include the whistleblower protection provisions of the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, as he saw fit to do so and as was in the authority of OSHA to do so.

42.  The mere act of using an alternative cleaning agent, not harmful to the complainants, would not have caused the Respondents any undue hardship. Moreover, the Complainants in this matter are all of Jamaican descent with brown skin color and clearly suffer from an allergic disability to the Respondents' chemical agents.

43. Respondents have a history of acting with indifference towards their Jamaican drivers. All of the complainants are Jamaican, and, to the complainants' knowledge, they are the only drivers who experienced the malice of CT Transit towards their disabilities and were subjected to the denial of their workers compensation claims despite an obvious situation where compensation is legally owed. Further, only the bus operators were treated this way and exposed to the dangerous chemicals.

44. In defiance of the Civil Rights Act, the Americans with Disabilities Act, Section 11(c) of the OSHA Act, and a general sense basic morality, the Respondents have subjected the complainants to severe levels of discrimination and retaliation on the basis of their national origin and disabilities and for participating in a protected activity and have done so overtly.

45. The only inferable reason why the Respondents refused to substitute the harmful chemicals with safer and equally effective ones would be to directly harm the Complainants, force them out of work, and silence their legitimate complaints. Respondents succeeded in doing so, and as if that wasn't enough, they denied the claims to worker compensation from the complainants by contradicting every medical professional who examined the complainants, including their own, in deciding that the chemical was not the cause of the Complainants' symptoms.

46. None of the Respondents are even remotely qualified to make such a medical judgement. If they were, there would be no need for them to provide medical professionals for these purposes.  Medical conclusions could simply be left to the unqualified discretion of Ms. Pellegrini and the Respondents.

47. The Respondents clearly demonstrated actions in failing to accommodate  and in retaliating against the Complainants, are in direct violation of the ADA, including; 1) refusing an

interactive process to discussion appropriate accommodations; 2) refusing to acknowledge valid medical documentation of causation; 3) forcing its employees out of the workplace without compensation, 4) denying their workers' compensation claims despite concurring medical reports; 5) appealing claims for unemployment compensation; and 6) refusing to implement the simple accommodation of just changing its cleaning products for over a four (4) month period.

48. It is unequivocal that Respondents did not implement any modified disinfecting procedures **_to safeguard the drivers or even the public from harm stemming from the use and improper application of TB CIDE QUAT and Clean on the Go_**. This is indisputable in light of the "Serious Violation" and accompanying fine of $7711.00, issued against the Respondent on or about December 20, 2020 citing failure to train employees "regarding the use of hazardous chemicals in their work area", exposing bus drivers to TB CIDE QUAT which is "causes skin and respiratory issues", and failing to provide Chemical Data Sheets to the employees "to notify them of the health effects prior to operating the buses".

49. The "serious violation" and accompanying fine was issued based upon OSHA investigator Paul Emanuel's inspection which took place on June 11, 2020, during the time that Respondent falsely allege they were no longer using the dangerous chemical and had modified their disinfecting procedures. According to Respondent, they implemented this modification on or about April 9, 2020.

50. Once OSHA's onsite inspection and investigation were completed, Respondent continued using the chemicals for some time and reverted back to their inadequate method for applying the dangerous chemicals, despite OSHA's findings.

51. Objective medical findings or evidence refers to visible, measurable findings obtained by a medical examination, tests, or diagnostic imaging. Here, there were three (3) other persons, professional medical doctors, who conducted medical exams and tests before concluding that Complainants' injuries were work related and a direct result of chemical exposure. Yet, Ms. Pellegrini disregarded their opinions, denied Complainants' WC benefits, which in turn denied Complainants the medical benefits necessary to be able to consult with a medical specialist. With that, Respondent continued this course of action until Complainants were finally allowed back to work three (3) months after the initial return to work on restricted duty was issued by Dr. Moore, and one (1) month after the full return to work, and after all this time, Respondent continues to deny the workers' compensation claims and have failed to make Complainant's whole.

52. The Respondents overtly engaged in acts violative of Title VII of the Civil Rights Act and C.G.S. 46a-60(b)(1) by failing to provide safe working conditions for the Complainants on the basis of their national origin, disability, and class.

53. Further, Respondents failed to provide a legitimate non-discriminatory reason for violating Complainant's rights under the ADA, for refusing to allow Complainants to return to work despite medical authorization allowing them to do so, and for denying their Worker's Compensation claims as well.

54. The explanation that the Complainants' injuries "did not arise out of the course of employment and there are no clinical objective findings to support causation," does not logically flow from the medical documentation and findings from Respondent's own Worker's Compensation providers as well as from Complainants' private physicians, who opined to the contrary.

55. Hence, the only reasonable inference that can be drawn from Respondent's adverse employment actions is that Respondent used their power and position to retaliate against Complainants for reporting Respondent's use of the chemical agents, first, to the Union, then to OSHA.

56. Thus, the respondents have violated the Complainant's civil rights and have maliciously retaliated against complainants for the filing of grievances and utilizing the proper administrative channels.

57. All of these actions have resulted in unnecessary pain and suffering for the Complainants who continue to suffer the lingering effects of exposure to the chemicals.

## V. CAUSES OF ACTION

58. Complainants' reference all of lines 1-58 as if fully incorporated herein.

59. [I]n a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took *adverse action* against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

60. The Complainants' illnesses and suffering have only perpetuated and become more severe. What was initially skin rashes, swelling, and difficulty breathing, has now progressed into chronic headaches (particularly for Mr. Brown), permanent physical injuries, and emotional and psychological distress.

61. What may be most concerning and is particularly heinous, is the denial of workers compensation to the complainants and the refusal of any form of relief. Each complainant has

suffered short- and long-term medical issues and suffering directly attributed to the Respondents' malfeasance and nonfeasance, and this is according to all medical evidence and documentation.

## VI. PRAYER FOR RELIEF

Whereby, Complainants pray that this honorable court accept jurisdiction over this matter, convene a jury for trial to determine all issues within its jurisdiction, and award Complainants compensatory damages and punitive damages as permitted by law, including back pay with interest, reinstatement of all accrued Paid Time Off hours and benefits, all reasonably incurred attorney's fees, and out of pocket expenses associated with medical treatment, as well as any other relief this court deems fit and as justice and equity dictates.

Dated:  February 6, 2022

                                                    Respectfully submitted,
                                                    LAW OFFICES OF
                                                    TRICIA S. LINDSAY, PC

                                                  /S/: *__Tricia S. Lindsay__*
                                                  Tricia S. Lindsay
                                                  531E. Lincoln Ave., Ste. 5B
                                                  Mount Vernon, NY 10552
                                                  Ph:  (860)783-8877
                                                  Fax:  (914)840-1196
                                                  Email:  tricialindsaylaw@gmail.com
                                                                attorney@tricialindsaylaw.com

# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Boston Area Office
15 New Sudbury Street, Room 475
Boston, MA 02203
(617) 865-3672
Website: www.eeoc.gov

# DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

To: Clifford McCrae
185 Barker Street, Apt. B2
Hartford, CT 06114

Re: Clifford McCrae v. H.N.S. MANAGEMENT COMPANY DBA CT TRANSIT
EEOC Charge Number: 16A-2021-00599

EEOC Representative and email:   Amon Kinsey
Supervisory Investigator
amon.kinsey@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC is closing this charge because Charging Party is pursuing claims in another forum.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Judy Keenan
01/27/2022

Judy Keenan
District Director

CC:
H.N.S. MANAGEMENT COMPANY DBA CT TRANSIT
100 Liebert Road
Hartford, CT 06141

Tricia S. Lindsay, Esq.
The Law Offices of Tricia S. Lindsay
531 E. Lincoln Avenue, Suite 5B
Mount Vernon, New York 10552

and by email to:
Tricia S. Lindsay, Esq. tricialindsaylaw@gmail.com
Cynthia R. Jennings, Esq. attorneyjennings@gmail.com
Tiffany Hubbard, Esq. thubbard@mccarter.com

# EXHIBIT B

**U.S. Department of Labor**    Occupational Safety and Health Administration
J.F.K. Federal Building, Room E340
Boston, MA  02203
Telephone    (617) 565-9857
Fax               (617) 565-9827
Web: www.whistleblowers.gov



February 4, 2022

Clifford McCrae
Garret Brown
Nastassia Campbell
c/o: Tricia S. Lindsay
Law Offices of Tricia Lindsay, PC
531E. Lincoln Ave., Ste. 5B
Mount Vernon, NY 10552
**Via Email:  tricialindsaylaw@gmail.com**

Re:     H.N.S. Management Company d.b.a. CT Transit / McCrae Case #1-0280-20-059 / Brown Case #1-0280-20-062 / Campbell Case # 1-0280-20-057

Dear Ms. Lindsay,

On July 17, 2020, your clients filed a complaint under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142 and Section 11(c) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. §660(c).  Over 210 days have passed since the filing of this complaint.  Under NTSSA, if the Secretary has not issued a final decision within 210 days of the filing of the complaint, and there is no showing that such delay is due to the bad faith of the complainant, the complainant may bring a *de novo* action in Federal District Court.

You have notified this office by email dated February 3, 2022, that you have filed the above-captioned case in Federal Court.  As a result of your decision to proceed with your NTSSA case in Federal Court, rather than before the Secretary of Labor, your complaint under NTSSA before this office is hereby **DISMISSED**.

This letter also confirms your conversation with this office on February 4, 2022, in which you advised that you wished to withdraw your clients' complaint under Section 11(c) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. §660(c) in the above-referenced matter.  As we discussed, by withdrawing your complaint, you are waiving your right to appeal OSHA's determination. Your request to withdraw your complaint under Section 11(c) in the above-captioned matter has been approved.  With this withdrawal, the case under Section 11(c) in this matter is **CLOSED.**

If at any time, you have questions or require further information regarding employee rights and employer responsibilities under any of the whistleblower statute administered by OSHA, please contact this office.


www.osha.gov

Sincerely,

*Kristen Rubino*

Kristen Rubino
Assistant Regional Administrator


cc:	Respondent (Email: THubbard@McCarter.com)