UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLIFFORD MCCRAE, GARRETT BROWN, AND
NASTASSIA CAMPBELL,

    *Plaintiffs*,

    *v.*

H.N.S. MANAGEMENT COMPANY d.b.a
CT TRANSIT, and ANGELA PELLIGRINI,
individually and in her official capacity,

    *Defendants*.

Civil No. 3:22-cv-00217-JBA

November 2, 2022

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS.**

Plaintiffs are bus operators employed by Defendant HNS Management Company ("HNS"). Ms. Pelligrini is HNS' Worker's Compensation Liaison. Plaintiffs' Amended Complaint [Doc. # 15] alleges that Defendants discriminated against them on the basis of race and national origin in violation of Title VII (Count One); burdened their right to contract in violation of 42 U.S.C. §1981 (Count Two); retaliated against them in violation of § 1142 of the National Transit Systems Security Act and § 2000e-3(a) of Title VII (Count Three); discriminated against them on the basis of disability in violation of the Americans with Disabilities Act (Count Four); and discriminated against them on the basis of race and national origin in violation of § 46a-60(b)(1) of the Connecticut Fair Employment Practices Act (Count Five).

Defendants moved to dismiss all claims [Doc. # 18]. As explained below, the Court GRANTS Defendants' motion with respect to all individual claims against Ms. Pelligrini, Count One, Count Two, Count Three's Title VII retaliation claim, and Count Five. The Court DENIES Defendants' motion with respect to Count Three's § 1142 claim and Count Four.

1

## I.    Background

Plaintiffs, who are Black and of Jamaican ancestry, are long-time bus operators employed by HNS. (Am. Compl. ¶¶ 1-3, 81.) HNS, according to Plaintiffs is "the principal operator of CT Transit, a public transportation system" and "a division of the Connecticut Department of Transportation" that provides services via contract providers. (*Id*. ¶ 4.)

In early April 2020, Plaintiffs began to experience allergic reactions while operating their buses. (*Id*. ¶¶ 13, 36.) Mr. McCrae and Mr. Brown experienced "sudden eye swelling, irritation and discharge, headaches, sneezing, rashes, and burning on his hands." (*Id.* ¶¶ 14, 16). Ms. Campbell experienced "a feeling of her throat closing, severe nausea, swelling of her tongue and a sudden breakout of rash and hives on her face," leading her to see her doctor as soon as she was finished with work. (*Id.* ¶ 15.) Her symptoms began to subside once she left work, but reoccurred once she re-entered the bus. (*Id*.) Plaintiffs' health continues to be affected by exposure to the disinfectants. (*Id.* ¶ 42.)

At the time, HNS was using new disinfectants to clean the buses three times a day. (*Id.* ¶ 18.) Doctors determined that Plaintiffs' symptoms were allergic reactions to the chemicals in the disinfectants and warned that Plaintiffs should not be exposed going forward. (*Id.* ¶¶ 18-19, 88.) HNS was provided with medical documentation to that effect. (*Id.* ¶ 19.) Doctors also recommended that Plaintiffs see a specialist, but HNS's Worker's Compensation Liaison Angela Pelligrini denied the claim. (*Id.* ¶ 22.)

Plaintiffs' doctor then decided that all three Plaintiffs should stop work until the chemicals being used could be further investigated. (*Id.* ¶ 24.) Plaintiffs filed for worker's compensation benefits, which Ms. Pellegrini denied. (*Id.* ¶ 25.)

In May 2020, Plaintiffs' doctors agreed that Plaintiffs could return to work with reasonable accommodations, including the use of different disinfectants. (*Id.* ¶ 30.) HNS did not use alternate disinfectants, and instead instructed Plaintiffs that they could not return to

work until HNS stopped using the disinfectants at issue. (*Id.* ¶ 31.) However, HNS denied Plaintiffs' requests for alternate assignments or light duty. (*Id.* ¶ 32.)

In July 2022, Plaintiffs attended a meeting with an assistant manager at HNS, where they were told that it was up to Ms. Pellegrini to decide whether or not the disinfectants would continue to be used, and Ms. Pellegrini had decided to go ahead with their use. (*Id.* ¶ 35.) After this meeting, Plaintiffs filed individual complaints with OSHA. (*Id.*)

Plaintiffs returned to work in August 2022, and after their return, Defendants retaliated against them by denying them overtime and deducting premiums for suspended benefits. (*Id.* ¶¶ 46, 49.) Additionally, a person identified as "Linda from dispatch" complained that "it's always the Jamaicans," and "the Jamaicans always give the problems." (*Id.* ¶ 51.)

## II.   Standard

Defendants have moved to dismiss under both Rule 12(b)(6) and Rule (b)(1). "To survive a [12(b)(6) motion to dismiss for failure to state claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (internal quotation marks omitted). To be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must be interpreted liberally, all allegations must be accepted as true, and all inferences must be made in the plaintiff's favor. *Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 767 (2d Cir. 2009). But a complaint that only "offers labels and conclusions" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Rather, a complaint must plead factual allegations that "raise a right to relief above the speculative level" and must be "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To decide the motion, courts can consider the

complaint and "extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice." *Lively v. WAFRA Inv. Advisory Grp.*, Inc., 6 F. 4th 293, 305 (2d Cir. 2021) (internal quotation marks and brackets omitted).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction will be granted "when the court lacks the statutory or constitutional power to adjudicate the case." *Soundkeeper, Inc. v. A & B Auto Salvage, Inc.*, 19 F. Supp. 3d 426, 428 (D. Conn. 2014). The burden of proving subject matter jurisdiction rests on the party invoking the jurisdiction, which must meet its burden by a preponderance of the evidence, with the court drawing all inferences in that party's favor. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). As with a motion to dismiss for failure to state a claim, the court's role is to assess the feasibility of the complaint. *Soundkeeper, Inc.*, 19 F. Supp. 3d at 428. However, unlike a motion to dismiss for failure to state a claim, the court may consider extrinsic materials such as affidavits and filings besides the complaint. *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 265 (D. Conn. 2010).

## III. Discussion

### A. National Transit Systems Security Act ("NTSSA")

Defendants argue that because Plaintiffs filed § 11(c) complaints with OSHA's Whistleblower Program, the NTSSA's election of remedies provision bars their NTSSA claims. (Defs.' Mem. at 9-13.) The NTSSA's election of remedies provision states that "[a]n employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the public transportation agency." 6 U.S.C. § 1142(e). In making this argument, Defendants urge the Court to find that the NTSSA election of remedies provision mirrors the one in the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20109(f) and follow decisions finding that the FRSA election of remedies provision bars an individual from

seeking relief under both § 11(c) and the FRSA. Plaintiffs reply that election of remedies is an affirmative defense that cannot be raised on a motion to dismiss. (Pls.' Opp'n [Doc # 20] at 10-11.)

The election of remedies provisions under both the FRSA and NTSSA are virtually identical, as are the broader sections where the provisions are located. *See York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) (explaining that when the language or one statute is "nearly identical" to that of another "discussion of the latter applies equally to the former"). The NTSSA whistleblower protections, including the election of remedies provision, were explicitly modeled on the protections in the FRSA. 153 Cong. Rec. H8586 (July 25, 2007); *see also Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 634-35, n.7 (4th Cir. 2015) (explaining that "[t]he NTSSA is modeled on the FRSA, the primary difference being that the NTSSA governs rail safety in the context of commuter railroads, urban rapid transit systems, and short-haul passenger services, unlike the FRSA, which governs rail safety in the context of freight rail operations").

The FRSA election of remedies provision bars an employee from bringing suit under the NTSSA's whistleblower provision if they have "sought protection" under an overlapping statute, such as § 11(c). *See Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 510 (6th Cir. 2015) (noting Congress' explicit intent to prevent people from seeking protection under both the FRSA and OSHA whistleblower provisions); *Lee*, 802 F.3d at 634-35 (explaining that the FRSA whistleblower statute was added to give a right of action to rail workers and the election of remedies provision was intended to reduce unnecessary litigation by limiting workers to suit under either the FRSA or OSHA's whistleblower statute).

The parties agree that the NTSSA election of remedies provision provides an affirmative defense, not a question of subject matter jurisdiction. (Defs.' Reply [Doc. # 21] at 6-7; Pls.' Opp'n at 10-11.) "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), . . . if the defense appears on the face of the complaint." *Pani v.*

*Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Plaintiffs' Amended Complaint[1] states that they initially filed an OSHA complaint under § 11(c), but withdrew that complaint before filing this case. (Compl. ¶ 10-11.) Additionally, the Amended Complaint does not allege that Plaintiffs arbitrated, litigated, or otherwise sought protection under § 11(c) beyond the initial complaint, on which no decision was made and no investigation was undertaken.  Under the FRSA, for an employee to seek protection under another statute "the rights guaranteed to the employee in the statute must be the barrier that is interposed between the employee and the threatened harm." *Perez*, 778 F.3d at 513.  A withdrawn complaint, absent any other action, does not show the use of § 11(c) as a "barrier that is interposed between the employee and the threatened harm." *Perez*, 778 F.3d at 513.  The Court therefore finds that the Plaintiffs' claim is not barred by the NTSSA's election of remedies provision from the face of Plaintiffs' Amended Complaint.[2]

## B.    Americans with Disabilities Act

### 1.    Sovereign Immunity

As a threshold matter, Defendants argue that Plaintiffs' ADA claims are barred by sovereign immunity.[3] (Defs.' Mem. at 14.) Plaintiffs argue that because sovereign immunity

---

[1] Here including "documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991)

[2] This narrow reading of § 1142(e) is bolstered by § 1142(g), which states that "[n]othing in this section shall be construed to diminish the rights, privileges, or remedies of any employee under any Federal or State law."  *See Lee*, 802 F.3d at 634-35 (explaining that an identical provision in the FRSA supports a narrow reading of the FRSA election of remedies provision because enforcing the election of remedies provision inherently weakens an employee's rights).

[3] Although Defendants state that HNS' sovereign immunity claim is dependent on HNS being a division of the state government, Eleventh Amendment sovereign immunity can extend to private entities that contract with state agencies. *See Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 43-47 (1994) (applying the standard for Eleventh Amendment immunity to determine whether PATH, a wholly owned subsidiary of the Port Authority, had sovereign immunity); *Mullin v. P & R Educational Services, Inc.*, 942 F. Supp. 110, 114 (E.D.N.Y 1996)

is an affirmative defense[4], it cannot be the basis for a motion to dismiss. (Pls.' Opp'n. at 9-10.) However, as noted above, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), . . . if the defense appears on the face of the complaint." *Pani*, 152 F.3d at 74.

Eleventh Amendment sovereign immunity generally bars ADA Title I suits against state entities. *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001). This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state," but does not protect a "municipal corporation or other governmental entity which is not an arm of the state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted).

> Whether an entity is an arm of the State depends on six factors: (1) how it is referred to in its documents of origin, (2) how its governing members are appointed, (3) how it is funded, (4) whether its function is traditionally one of local or state government, (5) whether the state has a veto power over the entity's actions, and (6) whether the entity's financial obligations are binding upon the state. When all six factors do not align, [courts] also consider whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk and remain mindful of [their] concern for the state fisc.

*Walker v. City of Waterbury*, 253 Fed. App'x 58, 60-61 (2d Cir. 2007) (internal quotation marks and citations omitted).

Plaintiffs' Amended Complaint does not contain sufficient information for the Court to whether HNS is entitled to sovereign immunity. The Amended Complaint states that HNS

---

(applying the standard for Eleventh Amendment immunity to determine whether a private company that contracted with the DMV had sovereign immunity).

[4] "[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit," but Defendants do not contest Plaintiffs' characterization of sovereign immunity as an affirmative defense. *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013).

does business as CT Transit, is the principal operator of CT Transit, and is a division of CDOT. (Compl. ¶ 4.) It also states that Plaintiffs and Ms. Pelligrini work for CT Transit. (*Id.* ¶¶ 1-3, 5.) This information is insufficient to elucidate what the relationship between HNS, CT Transit, and CDOT is, let alone the more detailed questions about HNS' organization, funding, and functioning that would be required to assess its entitlement to sovereign immunity.

### 2.   ADA-Protected Disability

Defendants argue that Plaintiffs have failed to state a claim under the ADA because they have not alleged that they have an ADA-covered disability. (Defs.' Mem. at 9-12, 14-15.) Determining whether a plaintiff has a disability under the ADA, requires assessment of: "1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018) (internal quotation marks omitted); *see also Felix v. New York City Transit Auth.*, 324 F.3d 102, 104 (2d Cir. 2003).

 Physical impairment is defined as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1).  The definition of major life activity includes "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 42 U.S.C. § 12102(2)(A). The term "substantially limits" is to "be construed broadly in favor of expansive coverage," and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Overall, "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Furthermore, "[a]n impairment that is episodic or in

remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Defendants first argue that Plaintiffs cannot allege the substantial impairment of a major life activity because Plaintiffs' symptoms only flared at work and Plaintiffs were able to return to work after a few months. (Defs.' Mem. at 15; Defs.' Reply at 4.) However, Plaintiffs are alleging an allergy, not a temporary condition, so the relevant question is whether the allergy "would substantially limit a major life activity when active," i.e. when Plaintiffs are exposed to allergens. 42 U.S.C. § 12102(4)(D). Even if Plaintiffs were alleging a short-term condition, "a short-term injury can qualify as an actionable disability under the ADA." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 93 (2d Cir. 2021).

Defendants next argue that Plaintiffs have not adequately pled a substantial impairment of the major life activities of breathing and seeing.[5] (Defs.' Mem. at 13-15; Pls.' Opp'n at 13-14.) Plaintiffs' symptoms are analogous to those alleged by plaintiffs with fragrance sensitivity, which "courts have consistently found [] to be a disability." *Rotkowski v. Ark. Rehab. Servs.,* 180 F. Supp. 3d 618, 623 (W.D. Ark. 2016) For example, in *Hawkins v. Arkansas Dep't of Human Services*, the court found that a plaintiff whose scent sensitivities caused coughing, wheezing, headaches, rash, swollen eyes, and difficulty breathing had sufficiently demonstrated substantial limitation of a major life activity. No. 4:14CV00546-JLH, 2017 WL 10621235, *6 (E.D. Ark. April 3, 2017).  Similarly, in *Rotkowski*, the court found

---

[5] Defendants argue that these major life activities are not specifically named in the Amended Complaint. (Defs.' Reply at 3.) However, major life activities do not need to be specifically named by Plaintiffs for the Court to consider them. *See Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26 (D. Conn. 1999) ("Though plaintiff has not explicitly relied upon these [major life activities], the court considers them as well."); *MacGovern v. Hamilton Sunstand Corp.*, 170 F. Supp. 2d 301, 309 (D. Conn. 2001) (inferring a major life activity not specifically mentioned by plaintiff).

Defendants also argue that Plaintiffs have not adequately pled a substantial impairment of the major life activity of working; however, Plaintiffs' opposition names only breathing and seeing. (Defs.' Mem. at 15-16; Pls.' Opp'n at 14.)

that a plaintiff whose fragrance sensitivity caused difficulty breathing, nausea, headaches, and swelling of the face, leading her to seek medical treatment[6], had sufficiently pled the substantial limitation of a major life activity. 180 F. Supp. 3d at 624; *see also Anderson v. Sch. Bd. of Gloucester Cnty.*, No. 3:18cv745, 2020 WL 2832475, \*14 (E.D. Va. May 29, 2020) (motion to dismiss ADA claim denied where plaintiff's fragrance sensitivity symptoms included pain in her mouth and throat, difficulty breathing, coughing, and headaches, occurred when exposed to fragrances, constituting a substantial impairment of her breathing and other major bodily functions).  Bearing in mind the fact that "substantially limit" "is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), Plaintiffs—like the plaintiffs in the fragrance sensitivity cases—have plausibly alleged persistent, systemic bodily reactions substantially affecting their respiratory and immune systems when exposed to certain substances, allegations which are sufficient to survive a motion to dismiss.

## C.    Title VII

### 1.    Discrimination on the Basis of Race and National Origin

Defendants argue that Plaintiffs have failed to state a claim for discrimination on the basis of race and national origin in violation of Title VII. (Defs.' Mem. at 17-19.)

> [T]o to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision. . . . [T]he "'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, i.e., a discriminatory reason.

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). However, a plaintiff need not prove that the only possible explanation for an adverse employment action is

---

[6] *See also Malzberg v. N.Y. Univ.*, No. 19-cv-10048, 2022 WL 889240, \*12 (S.D.N.Y. March 25, 2022) (explaining that "evidence of medical treatment may sometimes help establish the substantial-limitation requirement to establish a disability").

discrimination. "That there may be other explanations for [a defendant's] employment decisions does not render [a plaintiff's] allegations of discrimination inadequate as a matter of law." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).

Plaintiffs' factual support alleged for their Title VII claim is the fact that Plaintiffs are Black and Jamaican, most of the bus operators at HNS are Black and Jamaican, a statement by a dispatch employee named "Linda" that "it's always the Jamaicans," and "the Jamaicans always give the problems," and broad allegations of unspecified discriminatory practices. (Pls.' Opp'n at 16-15.) These allegations are insufficient to support a plausible inference of discrimination under Title VII.

With regard to the claimed disparate treatment of similarly situated co-workers, Plaintiffs have not alleged that there were any comparable co-workers who were treated differently. Plaintiffs claim that they were treated differently than managers, but managers are not similarly situated to Plaintiffs. (Am. Compl. ¶¶ 43-44.) There are therefore no comparators who could support a plausible inference of discriminatory intent. *See Perez-Dickson v. Bridgeport Bd. Of Educ.*, 801 Fed. App'x 811 (2d Cir. 2020) (finding that plaintiff's "unsupported, conclusory assertion" that "similarly situated employees" were not subject to adverse treatment did not support a plausible claim of Title VII discrimination); *cf. Vega*, 801 F.3d at 88 (finding that plaintiff plausibly alleged that adverse employment action was taken because of his ethnic background where "he was assigned a large percentage of Spanish-speaking students because he is Hispanic and bilingual, while his similarly-situated co-workers were not assigned additional work").

The remarks by "Linda" do not alter this conclusion of legal implausibility. "To determine whether a particular comment is probative of discriminatory animus . . . a court considers: (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . .; and (4) the context in which the remark was made, i.e., whether

it was related to the decisionmaking process." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (internal quotation marks omitted). Here, Plaintiffs claim Linda was a dispatcher, not a supervisor or decisionmaker, and offer no allegations of her relationship to the challenged employment decisions.

Finally, in light of *Iqbal*'s warning that a complaint that only "offers labels and conclusions" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss, Plaintiffs' conclusory declarations of discriminatory practices do not permit the Court to plausibly infer racially discriminatory motivation. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### 2.    Retaliation in Violation of § 2000e-3(a)

Defendants' motion requests dismissal of the entirety of Plaintiffs' Amended Complaint (Defs.' Mot. at 1), but their motion does not specifically mention Plaintiffs' Title VII Retaliation claim. (Compl. ¶ 85.) At the same time, Plaintiffs' Amended Complaint alleges no facts in support of this retaliation claim, discussing retaliation only in relation to unsafe workplace practices and disability discrimination.  (Compl, ¶ 84-85.) 42 U.S.C. 2000e-3(a) bars retaliation against any employee who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Unlawful employment practices are defined within 42 U.S.C. § 2000e-2 as discriminatory treatment on the basis of race or impermissible consideration of race.

Even construing Plaintiff's claim to be that Plaintiffs' unsafe working conditions were in part due to racial discrimination (Am. Compl. ¶ 69-77) such that retaliation against plaintiffs for opposing those unsafe workplace practices implicates Title VII, Plaintiffs fails to adequately plead a claim for Title VII retaliation.  While Plaintiffs do not need to prove that unlawful discrimination occurred to succeed on a Title VII retaliation claim, they must show that their reports were "motivated by a good faith, reasonable belief that the underlying

employment practice was unlawful" under Title VII. *Rivera v. Rochester Genessee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation marks omitted).  Plaintiffs have pled no facts to support an inference that their union grievances and OSHA reports were made because they believed Defendants' working conditions were racially discriminatory; instead, throughout their Amended Complaint they describe themselves as motivated by a desire for a safe workplace and the protection of their own health.  Without more, making complaints about disability discrimination and workplace safety are not complaints that are directed at discrimination on the basis of race.  *See Kelly v. Howard I. Shapiro & Ass. Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (explaining that complaints do not satisfy the good faith, reasonable belief requirement when the complaints do not specify the unlawful employment practice alleged).

### D.    § 1981

Defendants argue that Plaintiffs' § 1981 claim should be dismissed because "§ 1981 does not provide a separate private right of action against state actors." *Duplan v. City of N.Y.*, 888 F.3d 612, 618-19 (2d Cir. 2018); *see also Craig v. Conn. DHMAS*, No. 3:16-cv-2100-JCH, 2017 WL 5892193 (D. Conn. Nov. 28, 2017) (interpreting "state actor" to mean both state entities and state actors); (Defs.' Mem. at 21.) In the alternative, Defendants argue that Plaintiffs have failed to plausibly plead employment discrimination sufficient for a § 1981 claim to succeed. (*Id.*)

Although Plaintiffs' claim is framed as a § 1981 claim, Plaintiffs urge the Court to construe it as a § 1983 claim, since "plaintiffs need not invoke § 1983 expressly in order to state a claim, so long as they plead facts that plausibly indicate liability," *Quinones v. City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021).

But even if the Court were to construe Plaintiffs' Amended Complaint as asserting a § 1983 claim, Plaintiffs have not plausibly stated a § 1983 – or a § 1981 claim – for the same reasons that they have not plausibly stated a Title VII claim. *See Vega*, 801 F.3d at 88 (noting

that to state a § 1983 claim, "a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim"); *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 222 (N.D.N.Y 2014) (explaining that the pleading standard for § 1981 mirrors that of Title VII).

### E.   Connecticut Fair Employment Practices Act

Defendants urge the Court to dismiss Plaintiffs' Connecticut Fair Employment Practices Act ("CFEPA") claims for lack of subject matter jurisdiction because Plaintiffs' Amended Complaint does not allege administrative exhaustion of their claims.   Again, Plaintiffs maintain that because exhaustion is an affirmative defense it cannot properly be raised in a motion to dismiss. (Pls.' Opp'n at 12-13.) The question of whether CFEPA deems failure to exhaust as jurisdictional or defensive remains an open question in the District of Connecticut. *Compare Anderson v. Derby Bd. Of Educ.*, 718 F. Supp. 2d 258, 272 n.32 (D. Conn. 2010) (finding that under CFEPA, administrative exhaustion is jurisdictional) *with Collins v. Univ. of Bridgeport*, 781 F. Supp. 2d 59, 62-63 (D. Conn. 2011) ("If a plaintiff files a [CFEPA] complaint in court without having exhausted her administrative remedies . . ., the district court may dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).").

However, the Court will not explore the question of exhaustion because even if Plaintiffs have satisfied the exhaustion pleading requirements for CFEPA, Plaintiffs have not adequately pled discrimination in violation of CFEPA.  (Defs.' Mem. at 17.)  Plaintiffs' CFEPA claim alleges that Defendants discriminated against them on the basis of race.  (Compl. ¶¶ 90-91.) The standard for pleading discrimination under CFEPA is the same as under Title VII. *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (Conn. 2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both.").  Thus, for the same reason that Plaintiffs' Title VII claims fail, their CFEPA claims fail as well.

14

**F.      Claims against Ms. Pelligrini.**

At oral argument, Plaintiffs agreed to the dismissal of all individual claims against Ms. Pelligrini.  The Court will accordingly dismiss these claims.

# IV.   Conclusion

For the reasons given above, Defendants' Motion to Dismiss [Doc. # 18] is GRANTED in part as to Count One, Count Two, Count Three with respect to the Title VII retaliation claim, and Count Five, as well as to all five counts as to Ms. Pelligrini.  Defendants' motion is DENIED in part as to Count Three's NTSSA retaliation claim and Count Four.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 2nd day of November, 2022