# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLIFFORD MCCRAE, GARRETT BROWN, AND NASTASSIA CAMPBELL | Civil No. 3:22-cv-00217-MEG |
| Plaintiffs, | |
| v. | Date: May 3, 2024 |
| H.N.S. MANAGEMENT COMPANY d.b.a CT TRANSIT, | |
| Defendant. | |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Clifford McCrae, Garrett Brown, and Nastassia Campbell worked as bus drivers for Defendant H.N.S. Management Company, Inc. ("HNS"), which operated the CT*transit* bus service pursuant to a contract with the Connecticut Department of Transportation. Plaintiffs allege that the COVID-19 pandemic caused their employer to change its method of disinfecting buses and that they had allergic responses to particular disinfectants used to sanitize buses. *See* Am. Compl. (ECF No. 15) ¶¶ 14-16, 18. Plaintiffs allege that they notified HNS of this issue, *id.* ¶¶ 17-20, that HNS refused to accommodate them, *id.* ¶¶ 30, 36, and that HNS instead retaliated against them by refusing to allow them back to work, denying workers' compensation benefits, challenging unemployment compensation, and depriving them of overtime, *id.* ¶¶ 48-49.

Before the Court are the parties' cross-motions for summary judgment: both parties contend that no genuine issues of material fact remain in dispute as to Plaintiff's NTSSA and ADA claims against Defendant. This Court disagrees. For the reasons discussed herein, Plaintiffs'

Motion for Summary Judgment is **DENIED** and HNS's Motion for Summary Judgment is **DENIED.**

## I.        BACKGROUND

In February 2022, Plaintiffs filed this action against HNS and Angela Pellegrini.  *See* Compl., ECF No. 1.  Plaintiffs amended their complaint in June 2022 (now, the operative complaint), asserting five causes of action: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); (2) failure to provide equal rights in violation of 42 U.S.C. § 1981; (3) retaliation in violation of the National Transit Systems Security Act, 6 U.S.C. § 1142 ("NTSSA"); (4) failure to reasonably accommodate Plaintiffs' disabilities in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); and (5) discrimination and retaliation in violation of the Connecticut Fair Practices Act, Conn. Gen. Stat. § 46a-60(b)(1), et seq. ("CFEPA")  *See generally*, Am. Compl.  Defendants moved to dismiss the case in its entirety.  *See* Mot. Dismiss (ECF No. 18).  After considering both parties' arguments, Senior District Judge Janet B. Arterton granted in part and denied in part the motion, dismissing all claims against Pellegrini and permitting only the NTSSA and ADA claims to go forward.

The case then proceeded with discovery, scheduled to close in May 2023.  *See* Scheduling Order (ECF No. 29).  On March 31, 2023, the parties consented to jurisdiction by a United States Magistrate Judge, and this case was transferred to me.  *See* Transfer (ECF No. 39).  I presided over various discovery dispute issues, extended discovery, and set the dispositive motion deadline for October 31, 2023.  At the end of October 2023, the parties filed cross-motions for summary judgment.  *See* Pls.' Mot. Summ. J. (ECF No. 59); Def.'s Mot. Summ. J. (ECF No. 66).  These motions are now fully briefed.

### A.   <u>Evidentiary Rulings</u>

The parties challenge the admissibility of certain evidence submitted in their opponents' summary judgment motions.  Before summarizing the material facts or discussing the merits of the claims, this Court will address the parties' objections, as the Court may only consider admissible evidence on summary judgment.  *See* Fed. R. Civ. P. 56(a).

### 1.   **Defendant's Objections**

Defendant objects to Plaintiffs' Local Rule 56(a)1 Statement on several grounds, which can be separated into two general categories.  First, Defendant argues Plaintiffs' Local Rule 56(a)1 Statement fails to comply with the applicable Local Rules.  Second, Defendant argues the vast majority of Plaintiffs' exhibits fail to satisfy Federal Rules of Evidence admissibility standards, including that they are not properly authenticated and contain inadmissible hearsay.

### i.   *Failure to Comply with Local Rule 56(a)*

Local Rule 56(a) "require[s] each party to present its version of the facts in an orderly and structured manner that is designed to allow a judge to ascertain what facts are settled and what facts are in dispute."  *John v. Wal-Mart Store 2585*, No. 3:21-cv-01285 (MPS), 2024 WL 965091, at *1 (D. Conn. Mar. 6, 2024) (internal quotation marks omitted).  When moving for summary judgment, the movant must submit a "Local Rule 56(a)1 Statement of Undisputed Material Facts" that contains "a concise statement of each material fact"—"followed by a specific citation" to an affidavit or evidence that would be admissible at trial in compliance with Local Rule 56(a)3—in "separately numbered paragraphs."  D. Conn. L. Civ. R. 56(a)1, 3.  The non-movant must then submit its equivalent, a "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," in which the 56(a)1 Statement's numbered paragraphs are reproduced "followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact."  D. Conn.

L. Civ. R. 56(a)2(i).  All denials must also comply with Local Rule 56(a)3's requirement to specifically cite an affidavit or admissible evidence.  *See* D. Conn. L. Civ. R. 56(a)2(ii), 3. Additionally, parties must include support in their opposition briefs of any objections that they raise in their Local Rule 56(a)2 Statements. D. Conn. L. Civ. R. 56(a)2(i) ("A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law.").

Defendant first argues that Plaintiffs' 56(a)1 Statement fails to comply with the Local Rules because they cite paragraphs from their amended complaint that Defendant disputes.  It is well-established that pleadings are not evidence—and cannot be considered at summary judgment—unless sworn under penalty of perjury.  *See Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), abrogated on other grounds by *Tangreti v Bachman*, 983 F.3d 609 (2d Cir. 2020)).  Plaintiffs did not file a verified complaint.  Therefore, the Court will not consider citations to the Amended Complaint that are disputed by Defendant, because they are not citations to admissible evidence.  *See* D. Conn. L. Civ. R. 56(a)1, 3.

Defendant next argues Plaintiffs fail to cite <u>specific</u> paragraphs or pages of evidence.  In support of their Motion, Plaintiffs attach voluminous medical records for each Plaintiff—Plaintiffs' Exhibits A through C—and cite generally to these records without a specific citation to a page or pages which support the asserted fact.  *See, e.g.,* Pls.' 56(a)1 Stmt. (ECF No. 59-1) ¶¶ 14, 15, 18.  This is also true of Plaintiffs' general citation to Plaintiffs' Exhibits E, F, G, M, N and W (erroneously identified as Exhibit X by Plaintiffs) in support of facts they claim are not in dispute without any specific citation to the voluminous records.  *See e.g.*, Pls.' 56(a)1 Stmt. ¶¶ 32, 34, 35, 36, 42.

It is not the role of the Court to search the summary judgment record for evidence supporting a party's position. *See N.Y.S. Teamsters Conf. Pension & Ret. Fund. v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (recognizing authority of district courts to institute local rules governing summary judgment submissions, which permits courts "to efficiently decide" such motions "by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'" (further citations omitted)).   Still, a court is entitled to review evidence outside of the specific citations provided by the parties. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").   To balance these two legal principles, the Court refrains from ruling that all generally-referenced exhibits are inadmissible, but it has only considered these exhibits where the parties' briefing points the Court to specific pages establishing admissible evidence. *John v. Wal-Mart Store 2585*, 2024 WL 965091, at *2 (considering only "properly supported facts gleaned from [the plaintiff's submissions").

## ii.       *Admissibility*

Defendant argues the Court should not consider Plaintiffs' exhibits that lack proper authentication, contain hearsay, are not "true and accurate" copies, and disclose confidential information.   Defendant fails to cite any legal authority—save for, in one instance, generally referencing the hearsay-based Rules of Evidence—supporting the arguments.   Moreover, Defendant does not point the Court to specific paragraphs or page numbers of the exhibits that are purportedly inadmissible.   In so doing, Defendant makes the same exact mistakes for which it criticizes Plaintiff.[1]

---

[1] Defendant requests sanctions for plaintiffs' counsel's failure to comply with Local and Federal Rules 56.   *See* Def.'s Opp'n (ECF No. 72) at 12–13.   In considering defense counsel's briefing and absent

Evidence submitted on summary judgment "must be capable of being 'presented in a form that would be admissible in evidence.'" *Johnson v. Dep't of Corr.*, No. 3:22-cv-112 (KAD), 2024 WL 1256045, at * n.5 (D. Conn. Mar. 25, 2024) (quoting Fed. R. Civ. P. 56(c)(2)). Beginning with authentication, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Second Circuit has said time and time again that "[t]he bar for authentication of evidence is not particularly high and the proof of authentication may be direct or circumstantial." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). One of the most common methods of authentication is through witness testimony. *See Vereen v. City of New Haven*, No. 3:17-CV-1509 (VLB), 2018 WL 6069098, at *8 (D Conn. Nov. 20, 2018). Here, Defendant argues the Plaintiffs' medical records (Exhibits A through C) are not properly authenticated and points out that there are photographs of individuals (presumably Plaintiffs) interspersed throughout them. The Court has already pointed out Plaintiffs' Local Rule deficiencies with respect to these exhibits. Setting that aside, while it may be true that the exhibits are not properly authenticated at the summary judgment stage, Plaintiffs will be able to testify to the authenticity of the medical records and the photographs. Therefore, the Court overrules this objection on these grounds, because a "reasonable juror could find in favor of authenticity." *See United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).

Moving on to hearsay, Defendant "objects to the extent Plaintiffs' exhibits contain inadmissible hearsay or double hearsay," and generally cites Exhibits A through C, E through F, and H. These six exhibits total over 200 pages. Having failed to identify the specific statements that are hearsay, the Court overrules this objection.

---

citing Rule 11 or persuasive legal authority specific to this case, defense counsel has not persuaded the Court that sanctions are warranted.

Next, Defendant takes issue with Plaintiffs' failure to provide "true and accurate" exhibits—by submitting highlighted documents and depositions without errata sheets—and failure to use bates stamps. At trial, Plaintiffs will be required to use the "original writing, recording, or photograph" or an exact duplicate, and they will be prohibited from highlighting or otherwise annotating documents. Fed. R. Evid. 1002; *see* Fed. R. Evid. 1003. Should depositions be admitted at trial, they will be submitted in their entirety. As for bates numbers, the Court is unaware of any rule that requires striking an entire document that lacks bates stamps. While bates stamps are certainly favored, when they are missing the Court will cite to the unique docket and page number at the header of each exhibit. These objections are overruled.

Lastly, Defendant objects to the fact Plaintiffs submitted confidential information in Exhibits A through C, M and P. As best the Court can tell (and absent specific citations from Defendant), it appears the confidential information that was disclosed are Plaintiffs' own confidential information, such as dates of birth, social security numbers, and health information. It is Plaintiffs' prerogative to disclose this information. *See* Fed. R. Civ. P. 5.2(h) ("A person waives the protection of Rule 5.2(a) as to the person's own information by filing it without redaction and not under seal."). Presuming such disclosure was made by mistake, the appropriate recourse is to seal or redact the documents, not disregard them entirely. The Court *sua sponte*— for the protection of Plaintiffs' personal identifying information and confidential medical information—ORDERS that Exhibits A, B, C, M, and P (ECF Nos. 60-1, 60-2, 60-3, 61-5, 62-1) be sealed.[2] *See* D. Conn. L. Civ. R. 5(e)3 ("A statute mandating or permitting the non-disclosure

---

[2] Plaintiffs' counsel is put on notice that she has an obligation to safeguard her clients' personal and confidential medical information from public disclosure and that the failure to redact and/or request that these exhibits be filed under seal is extremely concerning to the Court. *See* Fed. R. Civ. P. 5.2(a) advisory committee note to 2007 amendment ("Parties must remember that any personal information not otherwise protected by sealing or redaction will be made available over the internet. Counsel should notify clients of this fact so that an informed decision may be made on what information is to be included in a

of a class of documents (e.g., personnel files, health care records, or records of administrative proceedings) provides sufficient authority to support an order sealing such documents.").

### 2.  Plaintiffs' Objections

Plaintiffs object to the Court's consideration of Defendant's Exhibit K and J.  Defendant disagrees.

#### i.  *Industrial Hygienist Evaluation (Exhibit K)*

Plaintiffs object to the admissibility of Defendant's Exhibit K: the Industrial Hygiene Evaluation created by Industrial Hygienist Denese Deeds, who was retained by CT*transit* to evaluate its use of TB-Cide Quat and Clean on the Go hdqC2 to disinfect buses.[3]  *See* Def.'s Summ. J. Ex. K (ECF No. 68-11).  Specifically, Plaintiffs argue that Deeds' conclusions "are not based in fact, reality, or any authority on the part of the hygienists."  Pls.' Opp'n (ECF No. 73-1) at 4. Plaintiffs do not cite any Federal Rule of Evidence to support their argument.  Defendant maintains that the accuracy of the industrial hygienist's conclusions are "not material" to the motion.  *See* Def.'s Reply (ECF No. 75) at 5.

The Court agrees with Defendant.  HNS cited Exhibit K exclusively in the Fact Section of its brief, apparently to show HNS retained an industrial hygienist at OSHA's suggestion, two industrial hygienists conducted site visits, and both concluded the disinfectants were unlikely to

---

document filed with the court.  The clerk is not required to review documents filed with the court for compliance with this rule. The responsibility to redact filings rests with counsel and the party or non-party making the filing."); *DeSouza v. Park West Apartments, Inc.*, No. 3:15-CV-01668 (MPS), 2018 WL 7575205, at *1 (D. Conn. June 14, 2018) (explaining courts award sanctions for an attorney's continued failure to comply with Rule 5.2(a)); *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, No. 09–3681 (JNE/JJK), 2010 WL 5014386, at *3 (D. Minn. Nov. 24, 2010) (stating "[a]ttorneys who are slow to change run the very real risk of sanctions" for repeated public disclosure of a client's private information because "[t]he consequences are simply too serious").

[3] Exhibit K also contains e-mails between Deeds and CTtransit employees that circulate the evaluation.

have caused health issues.  *See* Def.'s Summ. J. Mem. (ECF No. 67) at 2–3.  Simply put, the industrial hygienists' conclusions are not relevant to the issues presented in this summary judgment motion, as evidenced by the fact that Defendant did not reference Exhibit K in its analysis.  *See* Fed. R. Evid. 401.  Therefore, the Court overrules Plaintiffs' objection with the caveat: the Court will not consider the content of Deeds' conclusions for the purposes of summary judgment, as it is undisputed the content is not "of consequence" in determining the motion.  *See* Fed. R. Evid. 401(b).

## ii.     *Affidavit of Catherine Gray (Exhibit J)*

Plaintiffs also object to the Court's consideration of Exhibit J—an affidavit from HNS's Director of Human Resources Catherine M. Gray—on the grounds her affidavit lacks personal knowledge.[4]  *See* Pl.'s 56(a)2 Stmt. (ECF No. 73) ¶¶ 4–7, 14; Pl.'s Opp'n at 5–7.  Defendant disagrees and points out Plaintiffs fail to provide any persuasive evidence or legal authority supporting their position.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "[P]ersonal knowledge' includes basic, commonsensical inferences, so long as they are grounded in observation or other first-hand personal experience and are not flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  *In re Bridge Constr.*

---

[4] Plaintiffs lodge a hearsay objection concerning paragraphs 4 through 7 and 14 of Exhibit E, an affidavit submitted by Director of Equipment and Maintenance Jacinto Torres.  First, Plaintiffs fail to cite any legal authority in the 56(a)(2) Statement.  Second, Plaintiffs do not brief this supposed objection, in contrast with their objection to the Gray Affidavit.  *See* D. Conn. L. Civ. R. 56(a)(2)(i) ("A party shall be deemed to have waived any argument in support of an objection that such party does not include in its memorandum of law.").  Third, the objected-to paragraphs do not appear to be hearsay, as they describe corporate actions not out of court statements offered for the truth of the asserted matter.  *See* Fed. R. Evid. 801(c).  Therefore, the Court overrules this objection.

*Servs. of Florida, Inc.*, 39 F. Supp. 3d 373, 383 (S.D.N.Y. 2014); *see generally, Knowledge, personal knowledge*, Black's Law Dictionary (11th ed. 2019) (defining "personal knowledge" as "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said").  Where a witness expressly avers the attestations are made on personal knowledge, the evidence may be considered on summary judgment.  *See SCR Joint Venture L.P. v Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009) (stating "[a]n affidavit making allegations on the basis of a party's personal knowledge, and not merely on information and belief … may be relied upon" in summary judgment briefing); *Evans Prods. Co. v. Clinton Bldg. Supply, Inc.*, 174 Conn. 512, 515–16 (1978) ("[I]n our view, the better rule is that followed by federal courts: in summary judgment proceedings, affidavits made by corporate officers and other parties must aver or affirmatively show personal knowledge of the matters stated therein.").  Even where a witness does not expressly aver personal knowledge, "[t]he test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge."  *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 458 (S.D.N.Y. 2022) (citation removed).

Here, Gray explicitly averred she had personal knowledge about the facts set forth in their affidavits.  *See* Def.'s Summ. J. Mem. Ex. E, Torres Aff. (ECF No. 68-5) ¶ 2; Def.'s Summ. J. Mem. Ex. J, Gray Aff. (ECF No. 68-10) ¶ 2.  By virtue of submitting an affidavit, Gray swore to the veracity of the statements under oath "before an officer authorized to administer oaths." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting Black's Law Dictionary 62 (8th ed. 2004)).  In arguing that Gray lacks personal knowledge, Plaintiffs merely speculate— rather than relying on admissible evidence—that Gray, a corporate officer, could not possibly have personal knowledge because her job duties and responsibilities did not encompass the information to which she attests.  *See* Pl.'s Opp'n at 6.  ("There is very little chance that Ms. Gray actually

possesses this knowledge, and it is much more likely that paragraph 3 of her affidavit is a statement that is made 'upon information and belief.'").  Credibility determinations and the weighing of evidence must be reserved for the trier of fact, not the judge.  *See Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017).

    **B.**   <u>**Facts**</u>

Taking into consideration the Court's above evidentiary rulings, the following facts are taken from the undisputed pleadings, the parties' Local Rule 56(a) Statements, and the admissible evidence in the record.  *See* D. Conn. L. Civ. R. 56(a).  *See* Am. Compl.; Ans. (ECF No. 26); Def.'s 56(a)1 Stmt. (ECF No. 68); Pls.' 56(a)1 Stmt.; Pls.' 56(a)2 Stmt.; Def.'s 56(a)2 Stmt. (ECF No. 72-1).

CT*transit* is the State of Connecticut's public bus service.[5]  The Connecticut Department of Transportation contracts with HNS, among other companies, to operate buses throughout multiple metropolitan districts.  *See* Ans. ¶ 4; Pls.' 56(a)2 Stmt. ¶ 1.

In 2014, HNS hired Plaintiffs Clifford McCrae, Garrett Brown, and Natassia Campbell as bus operators.  Pls.' 56(a)2 Stmt. ¶ 2.  The "general function" of a bus operator is described as: "Safely operat[ing] transit buses on routes, providing courteous helpful customer service; collecting fares; following scheduling; maintaining excellent attendance and working cooperatively with other employees on the team."  Def.'s Summ. J. Ex. D, Job Description (ECF No. 68-4) at HNS 001079.

For the relevant time period, Jacinto Torres served as HNS's Director of Equipment and Maintenance.  *See* Def.'s Summ. J. Ex. E, Torres Aff. (ECF No. 68-5) ¶ 1.  According to him,

---

[5] The Court takes judicial notice that this fact is publicly available on the CTtransit website.  *See Services*, CTTRANSIT, available at https://www.cttransit.com/services (last visited May 3, 2024) ("CTtransit is the Connecticut Department of Transportation (CTDOT)-owned bus service.").

HNS has protocols to disinfect buses "to ensure the safety of its Bus Operators, other workers, and the riding public." *Id.* ¶ 4. Part of the disinfecting protocol included using TB-Cide Quat and Clean on the Go hdqC2 to disinfect bodily fluid spills on buses. *Id.* ¶ 3. At the onset of the COVID-19 pandemic, HNS enhanced these disinfectant protocols, in relevant part by disinfecting the buses with TB-Cide Quat each night. *Id.* ¶ 5. In early April 2020, HNS added a second, midday round of TB-Cide Quat, so that each bus would be disinfected twice daily. *See id.* ¶ 6.

### 1.    Plaintiffs' Symptoms

HNS has a CT*transit* Worker's Compensation policy, which sets forth a procedure to report and receive compensation for injuries sustained at work. *See* Def.'s Summ. J. Ex. CC, WC Policy (ECF No. 68-29). Within 48 hours of injury, an employee must complete the CT*transit* Injury Report form, which includes a supervisor's signature. *Id.* at HNS 001052. When the injury requires medical attention, the employee is required to see "the appropriate company physician"— in this case, St. Francis Care Center for Occupational Health ("St. Francis Occupational Health"). *Id.* It is the employee's obligation to submit and continue to provide medical information from the treating physician to the supervisor and the "WC Officer" who is "responsible for investigating and administering job injury claims by CT*transit* employees in all divisions." *Id.* at HNS 001053. The WC Officer's obligations are to (a) comply with state workers' compensation statutes, and (b) "represent the Company's interest in minimizing the frequency, duration, and cost of claims." *Id.* Where an employee is given permission to work <u>with restrictions</u>, they "shall be provided alternative work in keeping with [their] specific work restriction(s)." The policy emphasizes: "**<u>ALL WORK RESTRICTIONS WILL BE ACCOMMODATED, NO EXCEPTIONS.</u>**" *Id.* at HNS 001054 (emphasis in original).

12

In early April 2020, Plaintiffs developed symptoms while working that were consistent with allergic reactions.  *See* Pls.' 56(a)2 Stmt. ¶¶ 17, 19, 23.  Brown testified that his eyes and throat burned, his skin broke out, and he suffered headaches.  *Id.* ¶ 17.  Campbell testified that she suffered an oral rash and tongue swelling, hives and itchiness on her face, nausea, and lightheadedness.  *Id.* ¶ 19.  McCrae testified that his nose, eyes, throat and face burned; his eyes watered; he experienced difficulty swallowing; and he felt nauseated.  *Id.* ¶ 23.  All three Plaintiffs properly completed the CT*transit* Injury Form and visited St. Francis Occupational Health between April 7 and 9.  *See* Def.'s Summ. J. Ex. Q, Brown WC Docs (ECF No. 68-17) at HNS 001097–1101 (4/8–9/20); Def.'s Summ. J. Ex. R, Campbell WC Docs (ECF No. 68-18) at HNS 001126–1129 (4/7/20); Def.'s Summ. J. Ex. S, McCrae WC Docs (ECF No. 68-19) at HNS 001471, 1473.  The record indicates Pellegrini was notified when Plaintiffs submitted their injury report.  *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 01096; Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001125; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001470.

When Plaintiffs visited St. Francis Occupational Health, they were seen by Daniel Nguyen, PA-C, who concluded that their symptoms likely resulted from exposure to new disinfectants, including TB-Cide Quat.  *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS001098 ("Concern for possible allergy insensitivity to Clean on the Go hdqC2 or TB-Cide Quat Disinfectant or both. OR from reaction of these cleaners with hand sanitizer that patient is cleaning work area prior to his shift."); Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001127 ("most likely due to 'clean on the go HDQC2[2]' or 'TB-Cide Quat Disinfectants.'"); Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001473 ("Above stated symptoms / diagnoses most likely due to recent new exposure to new disinfectant agents: HDQC22 neutral disinfectant cleaner or TB-Cide Quat.  Individually,

systematically, or with combination of hand sanitizer reaction.").[6]  At Plaintiffs' initial visits, Nguyen gave them a Restricted Duty status, indicating they could return to work as long as HNS used an alternative disinfectant or the previous disinfectant instead.  *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001100; Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001129; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001475.

According to Torres, HNS revised its midday protocol at the Hartford location on April 9, 2020 to limit TB-Cide Quat use to the back of the bus and to instead wash the driver's area with soap and water.[7]  Def.'s Summ. J. Ex. E, Torres Aff. ¶¶ 7–8.  Other evidence indicates that soap and water was not used until several days later.  Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001102 (indicating on 4/15/20 that "just yesterday soap and water was instituted to be used to clean driving surface areas").

For instance, on April 13, 2020, Nguyen e-mailed Angela Pellegrini, the Workers Compensation Program Manager, describing recent visits with Campbell and McCrae and their symptoms.  *See* Def.'s Summ. J. Ex. G, E-mails 4/13–14/20 (ECF No. 68-7).  He stated: "In addition to no longer allowing outside chemical to be used on the bus and only disinfecting the rear of the bus…  Any other ideas besides cleaning down their direct work areas of the possible residual disinfectant?  Dr. Winkle [sic] and I have agreed to have these current patients with ongoing symptoms avoid surfaces / spaces cleaned with the above discussed disinfectants to see if it remedies their problems."  *Id.* at HNS 002870.  Pellegrini responded that she reviewed videos of "each one of these claims," noting that Plaintiff Brown used hand sanitizer and other drivers had used outside products.  *Id.*  She also shared that the CDC recommended using soap and water.

---

[6] Nguyen is supervised by S. Paul Winkel, DO, FACP.

[7] Plaintiffs dispute Torres' representation but do not provide any evidence controverting this fact. *See* Pls.' 56(a)(2) Stmt. ¶ 7.

*See id.* By April 14, HNS representatives decided to use a "soap based cleanser to wipe down the driver's area during the mid-day disinfecting." *Id.* at 002869.

Notwithstanding the changed protocol for the driver's area, when Plaintiffs operated the CT*transit* buses, their allergic reactions returned and/or persisted.[8] *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001099–104, 1106–08, 1110–13 (visits 4/13/20, 4/15/20, 4/16/20); Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001132–43, 1147–49 (visits 4/10/20, 4/13/20, 4/17/20, 4/20/20); Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001476–81, 11484–86 (visits 4/10/20, 4/16/20, 4/20/20).

The record indicates an (undisclosed) HNS employee filed an injury report on April 15, 2020, which was circulated to Pellegrini. *See* Def.'s Summ. J. Ex. F, E-mails 4/15–17/20 (ECF No. 68-6). While the injury report is not included in the record, Pellegrini asked Nguyen to opine on the employee; the following day at 3:42 PM, Nguyen responded, naming and describing symptoms of four employees, three who are Plaintiffs in this action. *See id.* at HNS 002962.

### 2.    Events on April 17, 2020

It is undisputed that Plaintiffs' union made a telephonic OSHA complaint on their behalf on April 17, 2020. *See* Pls.' 56(a)2 Stmt. ¶ 31. Specifically, HNS was alleged to have exposed drivers to TB-Cide Quat, causing some to fall ill, and failed to circulate safety data sheets when requested. *See id*. That same day, OSHA sent HNS a letter informing the company of these allegations. *See* Def.'s Summ. J. Ex. V, OSHA Ltr. 4/17/20 (ECF No. 68-22). While the record

---

[8] Plaintiff Campbell stayed out of work between her physician visits on April 7 and 10, 2020, and her symptoms improved during that time. *See* Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001132, 1137. She went back to work for a Monday morning shift on April 13, only to suffer the same symptoms after having improved conditions. *Id.* Campbell went on leave, had improved symptoms, returned on April 16, and her symptoms worsened again, causing her to return to St. Francis Occupational Health on April 17. *See id.* at HNS 001142. She remained out of work thereafter and presented improved symptoms on April 20. *Id.* at HNS 001148.

does not indicate how or at exactly what time HNS received the letter, the OSHA correspondent signed the letter at 2:23 PM.

Later that afternoon at 4:04 PM, Pellegrini responded to Nguyen's April 15 e-mail, *supra* at 15, about the four employees who had filed workers' compensation injury reports. Pellegrini stated that she observed the disinfecting process, did a skin patch test with the disinfectant but did not have any symptoms, and that she talked to cleaners and bus operators who denied having chemical reactions.[9]  *See* Def.'s Summ. J. Ex. F, E-mails 4/15–17/20 at HNS 002961.

On April 17, Pellegrini denied Plaintiff Campbell's and McCrea's workers' compensation claims.  *See* Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001144; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001472.  The record does not indicate what time she made this decision. Three days later, Pellegrini denied Plaintiff Brown's workers' compensation claim.  Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001109.  Pellegrini testified that her denial was "based on medical opinion from Dan Nguyen."  Def.'s Summ. J. Ex. T, Pellegrini Depo. (ECF No. 68-20) at 35:10–17.  While she could not recall the specific medical report on which she relied, she added, "There had to be a medical report that stated that it was not the cause or the cause was unknown or there was no etiology, or something in that factor."  *Id.* at 135:8–11.  When asked to explain the Worker's Compensation Policy language—"**ALL WORK RESTRICTIONS WILL BE ACCOMMODATED, NO EXCEPTIONS**," Def.'s Summ. J. Ex. CC, WC Policy at HNS 001054— Pellegrini testified that such accommodations would only be made for accepted claims. *See* Def.'s Summ. J. Ex. CC, WC Policy at HNS 001054.

---

[9] Bus operators were questioned in front of their supervisors.  *Id.*

It is undisputed that Plaintiffs went out on leave the same days their workers' compensation claims were denied. *See* Pls.' 56(a)2 Stmt. ¶ 39. Plaintiffs remained out on leave until August 2020. *See id.* ¶ 40.

### 3.    Events During Plaintiffs' Leave

While on leave, Plaintiffs received care from George Moore, M.D. who submitted State Employee Worker's Status Report forms. *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001117–24 (visits 5/13/20, 6/3/20, 7/1/20, 8/6/20); Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 000230, 1151, 1155–56, 1159–60 (visits 5/6/20, 5/13/20, 7/1/20, 8/5/20); Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001492–99 (visits 5/6/20, 5/13/20, 7/1/20, 8/5/20). Plaintiffs Campbell and McCrae visited Dr. Moore on May 6, 2020, and he indicated they were "not capable of any form of work" until an environmental evaluation of their worksite could be conducted. *See* Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001152; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001493. All three Plaintiffs visited Dr. Moore the following week, and he indicated they could return to work so long as they could avoid buses cleaned with TB-Cide Quat and Clean on the Go hdqC2. *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001118; Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001155; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001494. This recommendation remained in place at Brown's June 3 and Plaintiffs' respective July 1 appointments. *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at 001119–22; Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001159; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001496.

On June 11, 2020, while Plaintiffs were out on leave, OSHA inspected the CT*transit* worksite. *See* Def.'s Summ. J. Ex. C, OSHA Health Narrative (ECF No. 68-3). CT*transit* informed OSHA that it stopped using TB-Cide Quat in the driver's area—switching to Dawn dish liquid—and switched to cleaning the buses once a day. *Id.* at HNS 002232. (Torres testified that

HNS stopped its midday disinfectant procedure in mid-July.  Def.'s Summ. J. Ex. E, Torres Aff. ¶ 9.)

In July 2020, Plaintiffs' union filed a grievance on their behalf alleging that HNS suspended them.  *See* Pls.' 56(a)2 Stmt. ¶ 59.  The record also contains an OSHA Case Activity Worksheet dated July 17, 2020.  *See* Def.'s Summ. J. Ex. JJ, OSHA Compl. (ECF No. 68-36). That same month, Plaintiffs asserted HNS had retaliated against them for reporting their allergic reactions to OSHA.  *Id.*

While out on leave, Plaintiffs exhausted their available paid time off.  *See* Pls.' 56(a)2 Stmt. ¶ 42.  Brown, Campbell, and McCrae each received approximately 39, 14, and 29 days of paid leave, respectively.  *See id.*  HNS submitted Plaintiffs' damages analysis into evidence, which indicates Campbell and McCrae received $11,074.00 in unemployment compensation benefits. *See* Def.'s Summ. J. Ex. DD, Damages Analysis (ECF No. 68-30).  While Plaintiffs did submit some unemployment-related documents in support of their Motion for Summary Judgment, *see* Pls.' Summ. J. Ex. [Unspecified] (ECF No. 63), these records do not establish the amount received.

### 4.    Return to Work

On August 5 and 6, 2020, Dr. Moore treated Plaintiffs and changed his recommendation, advising they could return on a "trial basis."  *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001124; Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 000230; Def.'s Summ. J. Ex. S, McCrae WC Docs at 001498.  This recommendation made no mention that an alternative disinfectant should be used.  *See* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001124; Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 000230; Def.'s Summ. J. Ex. S, McCrae WC Docs at 001498.

Once HNS received the doctor's note, its representatives discussed whether to bring back Plaintiffs.  *See* Def.'s Summ. J. Ex. HH, E-mails 8/12–19/20 (ECF No. 68-34).  With respect to Campbell's doctor's note, one CT*transit* employee, Cole Pouliot, stated, "Seems positive.  Any concerns bringing her back on a trial basis?"  *Id.* at HNS 002824.  Pellegrini responded, "Nope[.] None at all."  *Id.*  Pouliot then asked whether Campbell had been "brought back" yet and another CT*transit* employee, Linda Delallo, said: "Not yet.  Cathy and I spoke on Monday and she said she was still working on it with the OSHA person.  Cathy has the latest info."  *Id.*  Human Resources Director Catherine Gray said, "I think Angela [Pellegrini] said we should bring them all back right away."  *Id.*  DeLallo responded, "Sounds good to me.  We need them!"  *Id.*  Plaintiffs were brought back by August 20, 2020, having passed their drug tests and physicals.  *See id.* at HNS 002769–77.

Plaintiffs allege they were denied overtime.  HNS submitted documents that purportedly shows Plaintiffs' work days, the amount of time they worked, and their absences.  *See* Def.'s Summ. J. Exs. EE, FF, GG; Brown, Campbell, McCrae Calendars (ECF Nos. 68-31, 68-32, 68-33).  While the documents show days in which Plaintiffs worked more than 8 hours, there is no explicit indication of the amount of overtime that was received.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted).  The movant can satisfy this burden by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the movant "need not prove a negative" insofar as it "need only point to an absence of proof on [the non-movant's] part." *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).

To defeat summary judgment, the non-movant must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant must show more than "some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015).  That being said, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The court may not make credibility determinations, weigh evidence, or draw legitimate inferences, as these tasks are reserved for the finder of fact at trial.  *See id.*

Where the parties file cross-motions for summary judgment, the same standard must be applied.  *Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001).  Meaning, in each case, the court must "constru[e] the evidence in the light most favorable to the non-moving party."  *Id.*

## III.      DISCUSSION

By virtue of the cross-motions for summary judgment, the parties appear to agree in one respect: that there is no genuine issue of fact for the jury.  However, Plaintiffs posit that they have established as a matter of law all elements of both their NTSSA and ADA claim, whereas Defendant contends Plaintiffs fail to establish these elements as a matter of law.

The Court begins with Plaintiffs' summary judgment motion.  As explained above, Plaintiffs' 56(a)1 Statement fails to satisfy Local Rule 56(a) insofar as they cite to non-evidence (the unverified Amended Complaint) and hundreds of pages of exhibits without citing to *specific paragraphs or pages* of admissible evidence.  *See* D. Conn. L. Civ. R. 56(a)1, 3.  The Court has reviewed Plaintiffs' briefing and notes that a significant portion of Plaintiffs' citations to the record were to these deficient 56(a)1 Statement paragraphs.  *See, e.g.,* Pl.'s Summ. J. Mem. at 8–18 (citing Pls.' 56(a)1 Stmt. ¶¶ 13–15, 17–18, 20–21, 35–36, & 42).  In terms of admissible evidence on which the Court can rely, this leaves only some citations within paragraphs 4, 6–9, 16, 19, 44, 46 and lines 2 through 7 on page 79 of Plaintiff McCrae's deposition.  These paragraphs are limited to the following topics: (a) Plaintiffs' symptoms/injuries, *see* Pls.' 56(a)1 Stmt. ¶¶ 4, 6–9; (b) Defendant's denial of workers' compensation and unemployment compensation, *see id.* ¶¶ 16, 44; (c) Plaintiffs' belief Defendant continued to use the chemicals at issue and also used a water and Palmolive mixture, *see id.* ¶ 19; (d) Plaintiffs' leaves of absence, *see id.* ¶ 44; (e) Plaintiffs' receipt of less overtime after returning to work, *see id.* ¶ 46; and (f) two other employees of Jamaican descent who were afraid of requesting workers' compensation, *see* Pls.' Summ. J. McCrae Depo. (ECF No. 63-3) at 72:2–7.  Simply put, this evidence standing alone cannot establish all elements of both the NTSSA and ADA claims.  The Court will identify Plaintiffs' legal shortcomings in footnotes below, but will not otherwise engage in a messy back-and-forth analysis between the two summary judgment motions when the evidence is clearly insufficient as a matter of law. Plaintiffs' Motion for Summary Judgment is **DENIED** as to both claims.

Moving on to Defendant's summary judgment, the Court notes it does not suffer from the same evidentiary deficiencies.  *See generally*, Def.'s 56(a)1 Stmt.  The Court will therefore address Defendant's motion, beginning with the NTSSA claim and turning to the ADA claim.

### A.   **NTSSA Claim (Count Three)**

The National Transit Systems Security Act generally prohibits a public transportation agency from discriminating against an employee "if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done," in relevant part, "to file a complaint or directly cause to be brought a proceeding related to the enforcement of this section."  6 U.S.C. § 1142(a)(3).  Under the NTSSA, prohibited conduct includes discrimination against an employee who "report[s] a hazardous safety or security condition."  6 U.S.C. § 1142(b)(1)(A).[10]

Defendant argues summary judgment should be granted for four reasons.  First, Plaintiffs' claims are preempted by the NTSSA's exclusive remedy provision.  *See* Def.'s Summ. J. Mem. at 18.  Second, Plaintiffs' claims are time-barred by the statute of limitations.  *See id.*  Third, Plaintiffs fail to establish a prima facie case of retaliation.  *See id.*  Fourth, HNS would have made the same decision even if Plaintiffs did not complain to their union and/or OSHA.  *See id.*  Plaintiffs challenge the first three arguments but do not address the fourth.  *See* Pls.' Opp'n at 14–19.  Because Plaintiffs do not explicitly concede the fourth argument, the Court will independently evaluate the evidence to determine whether the movant has satisfied its burden of proof.  *See* Fed. R. Civ. P. 56(a).

### 1.   **Preemption**

The NTSSA contains an "election of remedies" provision that limits an employee's ability to recover damages under multiple provisions of law for the same underlying conduct that it protects.  6 U.S.C. § 1142(e) ("An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the public transportation agency.").

---

[10] The Amended Complaint does not specify under which subsection Count Three is brought.

At the pleading stage, Defendant moved to dismiss the NTSSA claim on the grounds that it was precluded because Plaintiffs previously filed an OSHA complaint about the same conduct alleged in this case.  *See* Mot. Dismiss.  According to the Amended Complaint, Plaintiffs filed  OSHA complaints but then withdrew them after 210 days elapsed without a final OSHA decision.  *See* Am. Compl. ¶ 15.  Judge Arterton denied Defendant's motion, explaining that the NTSSA's "election of remedies" mirrors protections under the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 2109(f)…."  Ruling on Mot. Dismiss at 5, ECF No. 25.  In relevant part, both the FRSA and the NTSSA permit a plaintiff to file a complaint with the Secretary of Labor and, if no decision has been issued within 210 days, bring an original action for *de novo* review in the appropriate federal district court.  *See* 49 U.S.C. § 20109(d)(3) (FRSA) and 6 U.S.C. § 1142(c)(1), (7) (NTSSA).  While Judge Arterton recognized the FRSA "bars an employee from bringing suit under the NTSSA's whistleblower provision if they have 'sought protection' under an overlapping statute, such as § 11(c)," the court held that a "withdrawn complaint, absent any other action, does not show the use of § 11(c)."  *McCrae v. H.N.S. Mgmt. Co.*, No. 3:22-cv-00217-JBA, 2022 WL 16635390 at *3 (D. Conn. Nov. 2, 2022) (citing *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 510 (6th Cir. 2015) and *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 634–35 n.7 (4th Cir. 2015)).

Defendant appears to be asking this Court to revisit and reverse Judge Arterton's above conclusions of law.  "As most commonly defined, the ['law of the case'] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  While this doctrine is "admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment," *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), a court "should depart from [the 'law of the case'] sparingly and only when

presented with cogent and compelling reasons," *United States v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024).   As with a motion for reconsideration's legal standard, "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"   *Virgin Atl.*, 956 F.2d at 1255 (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790); *see also Aquart*, 92 F.4th at 92 (stating the law of the case "will be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated").

Not only has Defendant <u>not</u> presented the Court with any "cogent and compelling reasons," it merely copied-and-pasted the exact same argument it made in its motion to dismiss.  *Compare* Mot. Dismiss Mem. (ECF No. 19) at 9–13; *with* Def.'s Summ. J. Mem. at 18–21, ECF No. 67. Having failed to persuade Judge Arterton, this Court will not give Defendant a second bite at the apple.  *See Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-0054 (JCH), 2022 WL 807052, at *4 (D. Conn. Mar. 16, 2022) ("Law of the case is a 'doctrine of judicial efficiency' that allows the court to avoid duplicative litigation of issues that have already been decided.").

In any event, the record establishes that Plaintiffs filed their OSHA complaint on July 17, 2020; the Secretary of Labor did not issue a decision within 210 days; Plaintiffs withdrew their OSHA complaint and filed the instant action in federal court; and, as a result, OSHA dismissed the complaint before it.  *See* Am. Compl. Ex. B, OSHA Ltr. 2/4/22.  Section 1142 and the regulations interpreting it permit such an OSHA filing and *de novo* review by federal court.  *See* 6 U.S.C. § 1142(e) (*de novo* review); 29 C.F.R. § 1982.103 (Filing of retaliation complaints). Therefore, this argument is unavailing.

### 2.    Statute of Limitations

Subsection 1142(c)(1) requires an employee who believes their employer has discriminated against them in violation of the NTSSA to file a complaint with the Secretary of Labor within 180 days of the violation.  6 U.S.C. § 1142(c)(1).  It is undisputed that Plaintiffs took leave between April 8 and 20, 2020.  *See* Pl.'s 56(a)2 Stmt. ¶ 39.  The record includes the Case Activity Worksheet concerning Plaintiffs' complaints with OSHA.  *See* Def.'s Ex. JJ, OSHA Compl.  The Worksheet establishes the following facts: on April 17, 2020, Plaintiffs' union filed an OSHA complaint on their behalf, describing their allergic reactions to Defendant's chemical cleaning products; on July 1, Plaintiffs were cleared to go back to work but Defendant did not permit them to do so; on July 17, Plaintiffs complained to OSHA that they were "being punished for reporting [their] allergic reactions."  *Id.*  The record also contains a letter from OSHA to Plaintiffs' counsel, stating: "On July 17, 2020, your clients filed a complaint under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142 and Section 11(c) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. §660(c)."  Am. Compl. Ex. B (emphasis added).  Because July 17 falls within 180 days of Plaintiffs' dates of leave and denial to return to work, the evidence establishes Plaintiffs complied with § 1142(c)(1)'s 180-day statute of limitations.

Despite this evidence, Defendant argues that Plaintiffs did not file an NTSSA complaint with OSHA until April 26, 2021, more than nine months after they returned to work.  *See* Summ. J. Mem. at 21–22.  To support this argument, Defendant refers to paragraph 62 of its 56(a)1 Statement, which cites Exhibit B attached to the Amended Complaint—but, as explained above, this exhibit indicates the NTSSA claim was timely raised on July 17, 2020.  Curiously, Plaintiffs concede this statement of fact is true even though Exhibit B does not support such a finding.  However, absent any evidence in the record supporting Defendant's argument, the Court finds

Defendant fails to satisfy its burden under Federal Rule of Civil Procedure 56(a).  Because Plaintiffs alleged they were "being punished for reporting [their] allergic reactions," on July 17, 2020, Def.'s Ex. JJ, OSHA Compl., the Court finds they timely filed the requisite "complaint with the Secretary of Labor alleging such discharge or discrimination," 6 U.S.C. § 1142(c).

### 3.  *Prima Facie* **Case**

Where an NTSSA claim is initially brought before the Secretary of Labor but is later properly brought before the district court for *de novo* review—as is the case here—the claim "shall be governed by the same legal burdens of proof specified in paragraph (2)(B) for review by the Secretary of Labor."  6 U.S.C. § 1142(7).  Section 1142(2)(B) requires a complainant to make a "prima facie showing" that the alleged unlawful behavior "was a contributing factor in the unfavorable personnel action in the complaint."  6 U.S.C. § 1142(2)(B)(i).  Section 1982.104 of Title 29 of the Code of Federal Regulations sets forth the *prima facie* elements as follows: (1) "The employee engaged in a protected activity" or "was perceived to have engaged or to be about to engage in protected activity;" (2) "The respondent knew or suspected that the employee engaged in the protected activity" or "perceived the employee to have engaged or to be about to engage in protected activity;" (3) "The employee suffered an adverse action;" and (4) "The circumstances were sufficient to raise the inference that the protected activity (or perception thereof) was a contributing factor in the adverse action."  29 C.F.R. § 1982.104(e)(2); *see Hedlund v. New York City Trans. Auth.*, 507 F. App'x 35, 36 (2d Cir. 2013) (citing with approval 29 C.F.R. § 1982(e)(2) as the "requirements for retaliation claims under the NTSSA").[11]

---

[11] In Plaintiffs' 56(a)(1) Statement, the properly cited evidence did not address the first and second factors.  Summary judgment therefore could not be granted in their favor.

Defendant argues Plaintiffs fail to establish all four elements of the *prima facie* case.  First, Defendant argues Plaintiffs did not engage in protected activity because their <u>union</u> lodged the telephonic OSHA complaint on their behalf.  *See* Def.'s Summ. J. Mem. at 22.  Second, Defendant argues it did not know the union complaint involved Plaintiffs until they disclosed their identities in their § 11(c) OSHA complaints.[12]  *See id.* at 23.  Third, Defendant argues the denial of overtime or "forcing Plaintiffs out of work" does not constitute an "unfavorable personnel action."  *Id.* Fourth, Defendant argues the alleged protected activity could not have been a "contributing factor" because the workers' compensation claim denials predated Defendant's discovery of Plaintiffs' identities.  *See id.* at 23–24.

### i.     *Protected Activity*

Starting with the first element, the NTSSA protects employees who "report[ ] a hazardous safety or security condition" and/or "file a complaint or directly cause to be brought a proceeding related to the enforcement of this section…."  6 U.S.C. § 1142(a)(3), (b)(1).  The evidence establishes that Plaintiffs filed an OSHA complaint about HNS's use of cleaning products that were "causing some bus operators to have an allergic reaction."  *See* Def.'s Summ. J. Mem. Ex. JJ, OSHA Compl. at HNS 001294, -001508, & -003468.  While it is true that the initial complaints were filed anonymously through the union, the union did so on Plaintiffs' behalf (and their identities were revealed by July 2020).  *See id.*  OSHA initiated an investigation as a result of their complaints.  *See* Def.'s Summ. J. Mem. Ex. C.  Defendant's citation *to Marbley v. Teamster Loc. 988*, No. 4:22-CV-3396, 2023 WL 4713825, at *7 (S.D. Tex. July 24, 2023) is unavailing, as that case addressed the NTSSA's exhaustion of remedies requirement, not whether a union's OSHA

---

[12] The written OSHA complaint was not made until July 17, 2020.  *See* Def.'s Summ. J. Ex. JJ, OSHA Compl.

complaint <u>on the employee's behalf</u> constituted protected activity.[13]   Because Plaintiffs filed a complaint (with the union's assistance), the contents involved hazardous conditions, and it led to an OSHA investigation, Plaintiffs clearly satisfy the first element.

### ii.        *Knowledge*

Moving on to the second element, the evidence establishes Defendant was aware of their protected activity by mid-July 2020.  *See* Def.'s Summ. J. Mem. Ex. JJ, OSHA Compl. at HNS 001294, -001508, & -003468.  A reasonable jury could also conclude that Defendant "suspected" or "perceived" Plaintiffs to be the anonymous OSHA complainants, *see* 29 C.F.R. § 1982.104(e)(2)(ii), as Plaintiffs filed workers' compensation claims with the company in early April 2020, and these claims specifically stated Plaintiffs developed symptoms from chemicals on the buses.  *See* Def.'s Summ. J. Exs. Q–S, ECF Nos. 70-3, 70-4, & 70-5.  Furthermore, the evidence establishes that Plaintiffs were the only three drivers who had allergic reactions to the chemicals. *See also* Def.'s Summ. J. Ex. C at HNS 00223 (CT*transit* Health Narrative explaining, "The challenge with this complaint is that the chemical being used is being used in three different locations, representing 800 drivers, and only three drivers have had issues.").  At the time when HNS was notified of the OSHA complaint on April 17, 2020, the company would have already been aware of the three individuals.

### iii.        *Adverse Actions*

As for the third element, Plaintiffs allege they were subjected to the following adverse actions: (1) denial of workers' compensation, (2) opposition to receiving unemployment benefits, (3) denials of alternative assignment and/or light duty (i.e., refusal to allow them to return to work),

---

[13] Indeed, counsel merely italicized two words ("the employee") of language from 29 C.F.R. § 1982.100(a), which improperly suggested the district court held that an employee can only be protected by § 1142 if they bring a complaint without the assistance of a union.

and (4) denial of overtime.  *See* Pls.' Opp'n at 18.  Defendant fails to raise any persuasive legal authority showing these four purported events are <u>not</u> adverse actions as a matter of law.  *See* Def.'s Mem. at 23 (referencing NTSSA's definition of "unfavorable personnel action" in a single paragraph without providing substantive analysis to the particular allegations).

Under the NTSSA, an employer "shall not discharge, demote, suspend, reprimand or in any other way discriminate against an employee" for exercising their rights, in good faith, under the NTSSA.  6 U.S.C. § 1142(a) (emphasis added).  Neither the Supreme Court nor the Second Circuit have defined the outer limits of the NTSSA's anti-retaliation provision.  This is also true for the NTSSA's counterpart, the FRSA.  However, the Second Circuit did recognize in a summary order, *Sirois v. Long Island Railroad Company*, 797 F. App'x 56, 59 (2d Cir. 2020), that the FRSA's anti-retaliation provision "parallels that of other anti-retaliation statutes, including Title VII."  Under Title VII, an employer is prohibited from taking any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  The employer's action must be "materially adverse to a reasonable employee."  *Id*.  Notably, "the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur in the workplace."  *Id.*  While it remains an open question as to whether *Burlington Northern* applies to FRSA (and by extension, the NTSSA), this Court sees fit to use the *Burlington Northern* standard in light of the Second Circuit's acknowledgement that such antiretaliation provisions mirror each other.

"Material adversity is to be determined objectively, based on the reactions of a reasonable employee."  *Tepperwien v. Entergy Nuclear Ops, Inc.*, 663 F.3d 556, 568 (2d Cir 2011).  However, the court must also consider context: "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as

part of a larger course of conduct." *Id.* Put another way, a single action might seem trivial, but when considered in totality with the other alleged conduct, the employer's "larger course of conduct" might rise to the level of an adverse action. *Light v. City of New Haven Bd. of Educ.*, No. 3:22-cv-425 (JAM), 2024 WL 1199717, at *6–7 (D. Conn. Mar. 19, 2024) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014)); *see Burlington N.*, 548 U.S. at 69 (explaining "the significance of any given act of retaliation will often depend upon the particular circumstances"). *Burlington Northern* cautions courts from making this determination at summary judgment when the question of "whether a [proposed adverse action] is materially adverse depends upon the circumstances of the particular case…." *Burlington N.*, 548 U.S. at 71.

As an initial matter, the jurisprudence is not clear as to whether all four adverse actions could be separately actionable. Courts have held that delayed reinstatement and overtime denial can, standing alone, constitute actionable adverse actions. *See Greenberg v. New York City Transp. Auth.*, 336 F. Supp. 2d 225, 247 (E.D.N.Y. 2004) (holding "delay in reinstating an employee" is an adverse action in an ADA claim); *Wilson v. Connecticut Dep't of Transp.*, --- F. Supp. 3d ---, 2023 WL 8476262, at *11 (D. Conn. 2023) (citing *Lewis v. Triborough Bridge & Tunnel Auth.*, 31 F. App'x 746, 748 (2d Cir. 2002)) (holding denial of overtime qualifies as adverse action as a matter of law). The same cannot be said for the denial of workers' compensation or a challenge to unemployment benefits insofar as the parties have not identified, and the Court is not aware of, binding authority holding that either is (or is not) an adverse action.

When viewing all actions in their totality, the Court finds there is a triable issue of fact as to whether HNS's workers' compensation denial, unemployment benefits contestation, alleged reinstatement delay, and overtime denial could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57. Namely, the evidence is

unclear as to several relevant facts, including the timing of events on April 17, 2020,—i.e., when Plaintiffs filed the OSHA complaint through the union, when Pellegrini learned of the filing, and when she made the workers' compensation decision—why the denial was made in light of the St. Francis Occupational Health evaluations recommending Plaintiffs return to work with restrictions, when Plaintiffs believed they would be able to return, and the amount of wages Plaintiffs were denied.  There is also conflicting evidence as to whether HNS refused to allow Plaintiffs to return to work.  *See, e.g.,* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001100, -1118–22 (physician permitting Brown's return to work); Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001129, -1155, -1159 (physician permitting Campbell's return to work; Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001475, -1494, -1496 (physician permitting McCrae's return to work); Def.'s Summ. J. Ex. HH, E-mails 8/12–19/20 (HNS employees deciding whether to allow Plaintiff's return).  Because "context matters," the court cannot evaluate the significance of the alleged adverse actions with these open questions.  *See Tepperwien*, 663 F.3d at 568.

Furthermore, the parties failed to submit sufficient evidence with respect to unemployment benefits and overtime.  With respect to unemployment compensation, Defendants cited to Plaintiffs' damages analysis but did not provide any underlying documents, including evidence establishing whether it contested unemployment at all.  Plaintiffs provided unemployment-related documents in its Motion for Summary Judgment, *see* Pls.' Summ. J. Ex. [Unspecified], but not its opposition and, in any event, failed to show why Defendant's response (that Plaintiffs were on medical leave) was retaliatory.  As for overtime, Defendant merely submitted work logs that do not clearly indicate when overtime was requested, approved/denied, or utilized.  *See* Def.'s Summ. J. Exs. EE, FF, GG; Brown, Campbell, McCrae Calendars.  As for Plaintiffs, they did not present evidence apart from their own subjective beliefs; there is no evidence of the amount of overtime

Plaintiffs received prior to filing their OSHA complaints, and so there is no way to compare and conclude whether the overtime was reduced after their return.  *See* Pls.' 56(a)2 Stmt. ¶¶ 50–58; *see Martires v. Connecticut Dep't of Transp.*, 596 F. Supp. 2d 425,  440 (D. Conn. 2009).

Meanwhile, CT*transit* was under investigation for OSHA violations.  *See* Def.'s Summ. J. Ex. C, OSHA Health Narrative.[14]  Given the volume of open questions that remain, it is a question for the jury to decide "from the perspective of a reasonable person in the plaintiff[s'] position, considering all the circumstances," to decide whether HNS's actions were "materially adverse" for each Plaintiff.  *Id*.

**iv.**      ***Contributing Factor***

The Second Circuit has not addressed what is required to show the protected activity was a "contributing factor" to the adverse employment action in an NTSSA case, but it has done so in the parallel FRSA context.  *See Tompkins v. Metro-North Commuter R.R. Co.*, 983 F.3d 74, 82 (2d Cir. 2020).  A plaintiff need not show the protected activity "was the sole factor … or that the employer acted only with retaliatory motive"—there must be, however, "more than a temporal connection."  *Id.*  The open questions of fact discussed for the third factor, *supra* at 30–31, also require a jury determination for the fourth factor.  Simply put, a reasonable juror could determine the evidence yields far more than an unactionable, temporal connection, or they might find there is no connection at all.

---

[14] In December 2020, OSHA cited CT*transit* with a "Serious" violation for failing to provide its employees with "effective information and training on hazardous chemicals in their work area," specifically, concerning TB-Cide Quat, "a disinfectant that causes skin and respiratory issues."  Def.'s Summ. J. Ex. Y, OSHA Citation (ECF No. 68-20) at HNS 002223.  CT*transit* later entered into a settlement agreement with OSHA.  *See generally, id.*; Def.'s Summ. J. Ex. Z, OSHA Settlement (ECF No. 68-26).

**4.      Defense**

Even if a plaintiff satisfies all elements of an NTSSA *prima facie* case, the employer will not be held liable if it "demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior."  6 U.S.C. §§ 1142(c)(2)(B)(ii), (iv).  Defendant failed to provide any evidence that it would have made the same workers' compensation decision absent Plaintiffs' OSHA complaint.  After reviewing the record, the Court concludes Defendant fails to establish clear and convincing evidence that they would have made the decision.  For these and the above reasons, summary judgment is **DENIED** as to Count Three.

**B.      ADA Claim (Count Four)**

The ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   Discrimination includes "not making reasonable accommodations to the known physical or mental limitations" of a qualified employee, "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).  In other words, "the ADA directs employers to make reasonable changes to their facilities, work schedules, training procedures, and the like to accommodate individuals" who can perform the "essential functions" of their jobs with or without accommodations.  *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (citing 42 U.S.C. § 12111(8)–(9)).

Failure to accommodate claims are evaluated under the "familiar *McDonnell Douglas* burden-shifting framework."  *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (referencing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  At the first step, the plaintiff has the initial burden to establish a *prima facie* case.  *See McDonnell Douglas*, 411 U.S. at 802.  A "failure to accommodate" *prima facie* case requires evidence of the following elements: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla*, 80 F.4th at 118 (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).[15]  If the plaintiff satisfies these elements, the burden shifts to the defendant "to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable." *Bey*, 999 F.3d at 165 (internal quotation marks omitted).

HNS challenges the first and fourth elements.  With respect to the first element, HNS argues that Plaintiffs' ailments do not satisfy the ADA's definition of "disability" insofar as they have not identified any major life activities which they either cannot perform or face significant restrictions.  *See* Def.'s Summ. J. Mem. at 14.  As for the fourth element, HNS argues it made a reasonable accommodation by placing them on medical leave and then changing their disinfecting protocol.  *See id.* at 17–18.  Alternatively—if the Court were to find Plaintiffs establish a *prima facie* case—HNS argues that Plaintiffs' accommodation requests were unreasonable.

Plaintiffs disagree.  Drawing on the motion to dismiss ruling—in which Judge Janet B. Arterton held the pleadings sufficiently alleged Plaintiffs had allergies that satisfied the "disability" definition—Plaintiffs contend that the first element has already been established as a matter of law.  *See* Pl.'s Opp'n at 8–9.  Plaintiffs argue they satisfy the fourth element, because the

---

[15] In Plaintiffs' Motion for Summary Judgment 56(a)(1) Statement, the properly cited evidence did not address the second, third, and fourth factors.  Summary judgment therefore could not be granted in their favor.

CDC makes hundreds of chemical agents available and their placement on unpaid leave is not a reasonable accommodation. *See id.* at 12–14.

### 1.       Element One: Disability

Again, Judge Arterton's motion to dismiss ruling establishes the law of the case for this element. Specifically, Judge Arterton assessed three factors to determine whether Plaintiffs properly alleged a disability: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." *McCrae.*, 2022 WL 16635390 at *4 (quoting *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018)). Judge Arterton observed that "Plaintiffs are alleging an allergy, not a temporary condition, so the relevant question is whether the allergy 'would substantially limit a major life activity when active,' i.e. when Plaintiffs are exposed to allergens." *Id.* at 9 (quoting 42 U.S.C. § 1202(4)(D)). Judge Arterton then reasoned that "Plaintiffs' symptoms are analogous to those alleged by plaintiffs with fragrance sensitivity, which courts have consistently held found [] to be a disability." *Id.* (internal quotation marks removed). In the end, Judge Arterton held that Plaintiffs "plausibly alleged persistent, systemic bodily reactions substantially affecting their respiratory and immune systems when exposed to certain substances." *Id.* at 10.

This Court will apply Judge Arterton's sound reasoning to the record. For all three Plaintiffs, the medical records establish that Plaintiffs experienced allergic reactions while operating buses, which gradually improved with time away from the worksite. *See, e.g.,* Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001099 (describing "bilateral eye redness and itchiness with sneezing over the past four days" and indicating "symptoms only occur while driving his transit bus at work" clarifying that "[w]hen he is at home or has a day off he is symptom-free");

Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001132, -1148 (documenting improvement of symptoms while on several day leave of absence); Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001476 ("He states he did not return to work yesterday after the office visit and states improvement of symptoms while at home.").   At the most acute, Brown's symptoms were described as "persistent bilateral eye redness, itchiness, nasal congestion, slight headache" with "drainage from the affected eyes previously without any change in vision or photophobia." Def.'s Summ. J. Ex. Q, Brown WC Docs at HNS 001102, -1106 (4/15/20, 4/16/20).   Campbell's worst symptoms included facial rash, lip swelling, cheek itchiness, eye heaviness and itchiness, throat heaviness, and tongue heaviness  Def.'s Summ. J. Ex. R, Campbell WC Docs at HNS 001128, -1148 (4/7/20, 4/20/20).  McCrae's experienced bilateral eye redness and itchiness, facial redness and itchiness, throat dryness and irritability.  *See* Def.'s Summ. J. Ex. S, McCrae WC Docs at HNS 001476, -1479 (4/10/20, 4/16/20).  He also expressed "he feels unsafe operating his work vehicle" and concerns for long-term effects.  *See id.* at HNS 001479.

As Judge Arterton's pointed out, a "major life activity" includes seeing, walking, standing, sitting, concentrating, and working.  *See id.* (quoting 42 U.S.C. § 12102(2)(A)).  An episodic impairment is one that "would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D).  The records establish a correlation between Plaintiffs' exposure to the disinfectants at work and the emergence of their symptoms.  Judge Arterton favorably cited case law in which a plaintiff's work-related allergic reactions led to rash, swollen eyes, headaches, nausea, and facial swelling were—even though episodic—deemed to be "disabilities" under the ADA.  *See McCrae*, 2022 WL 16635390 at *5.  While Plaintiffs do not have difficulty breathing or coughing as the fragrance plaintiffs did, their symptoms reached such a magnitude that they felt compelled to seek medical attention, take leave from work, and, in Brown's case, worried that driving was no longer

safe.  Importantly, Plaintiffs job duties require them to operate moving vehicles and keep members of the public safe with responsible driving.  Facial swelling and discomfort, headaches, and nausea could certainly impact a person's ability to safely operate a bus.  Because "substantially limit" is not a demanding standard, *see id.*, and working is a "major life activity," the Court finds Plaintiffs satisfy the first element.

### 2.    Element Four: Reasonable Accommodation

Under the ADA, a "reasonable accommodation" can take on many forms, including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices," among others.  42 U.S.C. § 12111(9).  When an employee requests an accommodation, "[t]he ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); 29 C.F.R. § 1630.2(*o*)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").  Plaintiffs' requested accommodation was to drive buses cleaned with an alternative disinfectant.  As Plaintiffs point out, hundreds of disinfectants likely existed at the time when the medical providers indicated they should return to work but avoid TB-Cide Quat. *See* Pls.' Opp'n at 13.  While Gray attests that disinfectants "were difficult to obtain in 2020 due to high demand and supply chain issues," she does not allege they were impossible to obtain.  Def.'s Summ. J. Ex. J, Gray Aff. ¶ 3.  Furthermore, there is no evidence that HNS attempted to engage in an interactive process with Plaintiffs.  Failing to do so "risks not discovering a means by which an employee's disability could have been accommodated and

thereby increases the chance that it will be found to have violated the ADA." *McBride*, 583 F.3d at 101.  Accordingly, Plaintiff has satisfied the fourth factor.

### 3.      Defendant's Shifted Burden

The onus is therefore on Defendant to prove that the request was unreasonable or would cause an undue hardship. *Bey*, 999 F.3d at 165.  Defendant argues the accommodation request was unreasonable because public health departments required HNS to use disinfectants and they were not able to change the products. *See* Def.'s Summ. J. Mem. at 17.  This is a textbook issue of fact.  "The reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder." *Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).  Therefore, Defendant fails to satisfy its burden with this argument.

Defendants also argue that placement on medical leave while they reviewed and revised their protocols constituted a reasonable accommodation. *See* Def.'s Summ. J. Mem. at 17.  As previously mentioned, the record indicates that placement on medical leave was HNS's unilateral decision without any back and forth with Plaintiffs.  An employer is not liable for failing to engage in the interactive process if "the accommodations provided to the employee were plainly reasonable." *Noll*, 787 F.3d at 98.  But, as Plaintiffs point out, they were forced to exhaust their accrued time off—this meant that, after 39 days, 14 days, and 29 days for Brown, Campbell and McCrae, they were left without any pay.  Courts have found unpaid leave to constitute a failure to accommodate in certain circumstances. *See Jamil v. Sessions*, No. 14-CV-2355 (PKC) (RLM), 2017 WL 913601, at *8 (E.D.N.Y. Mar. 6, 2017) (collecting cases).  Given the relatively few employees who required an accommodation, the recommendation from physicians, the potential availability of alternative disinfectants, and Defendant's denial/challenge of other sources of income (i.e., workers' compensation and unemployment benefits) during the uncertain COVID-

19 pandemic, the Court finds the jury must determine whether placing Plaintiffs on leave constituted a reasonable accommodation.  Therefore, summary judgment is **DENIED** as to Count Four.

## IV.      CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is **DENIED** in its entirety and Plaintiff's Motion for Summary Judgment is **DENIED** in its entirety.  This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF Nos. 33, 37. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

This case is ready for trial as to Counts Three and Four.  The Court anticipates scheduling trial sometime the month of September 2024.  On or before May 17, 2024, the parties are **ORDERED** to file a Joint Status Report that indicates:

1.  Whether the parties would like a referral to a magistrate judge for a settlement conference;

2.  How many days the parties anticipate for trial; and

3.  A reasonable proposed deadline to file a Joint Trial Memorandum and motions *in limine* in compliance with this Court's trial practices.

**IT IS SO ORDERED.**

*/s/ Maria E. Garcia*

Hon. Maria E. Garcia
United States Magistrate Judge